No. 12,776.

ALLOPATHIC STATE BOARD OF MEDICAL EXAMINERS VS. AUGUSTUS C. FOWLER.

1. Parties contesting the constitutionality of a law should tender that issue in the trial court, and can not raise it as a matter of right for the first time on appeal. When so raised below new special grounds can not be urged for the first time on appeal, particularly when an examination of evidence would be needed for their decision.

2. A bill having the same title as Act No. 49 of 1894 was introduced in the Senate as Senate Bill No. 23; it was read by its title and placed upon the calendar for second reading. It was subsequently, under a suspension of the rules, taken up on second reading, read by title and referred to a committee. The committee reported its action on Senate Bill No. 23, giving the exact title of the same. The committee reported the bill favorably by substitute. The bill was read by title. On motion the substitute was adopted in lieu of the original bill, and became Senate Bill No. 90. The title of the bill reported by the committee as a substitute was identical with that of the original bill. The bill as reported was read by title. Subsequently Senate Bill No. 90, reported by the

committee, was put upon its third reading. The bill was read in full. It was then taken up for final passage; the roll was called and the bill finally passed. A motion to reconsider was made, and the motion to reconsider was laid upon the table. *Held*, that a contention that Senate Bill No. 90 should be taken and considered as an original bill, and it should have been read in the Senate three times, and on three different days, once in full, was not well founded.

3. Act No. 49 of 1894 does not violate Act 29 of the Constitution, which requires that any law enacted by the General Assembly should embrace but one object; and that shall be expressed in the title, nor does it violate the Constitution as being a special law prohibited by Art. 46 of the Constitution.

The law is a general one, though bearing upon a special subject.

4. Whenever the pursuit of any particular occupation or profession requires for the protection of the lives or health of the general public, skill, knowledge and other personal attributes or characteristics in the person pursuing it, the General Assembly has the power and authority to have recourse to proper measures to ensure that none but persons possessing these qualifications should pursue it. A statute to that effect is not open to attack as depriving citizens of their right to earn a living. The right to practice medicine is not an absolute natural right, but a right or privilege to be exercised under conditions and limitations regulated by legislative authority.

5. The General Assembly, having the authority to require as a condition precedent to the right or privilege of any one to practise medicine in Louisiana, that he should be subjected before doing so to a prior examination as to his qualifications, and found and declared worthy and qualified, it has the right to select the particular agency to whom should be delegated that duty. Courts cannot control that selection. A statute creating a Board of Medical Examiners, to be composed of physicians recommended for appointment from lists to be furnished by the Louisiana Medical Society and the Hahneman State Medical Society, to be appointed by the Governor on such recommendation, is not open to attack as discriminating in favor of the allopathic and homeopathic schools against the eclectic school of medicine. No constitutional right is given to particular individuals entertaining peculiar theories of medicine to group themselves together, and, calling themselves a special school of medicine, under a selected name, to insist that they be recognized and dealt with as such.

6. The action of the Medical Board of Examiners is not conclusive, but is subject to correction in case of abuse.

7. The recognition by the constituted authorities of another State that a person was properly qualified to practise medicine, and that the medical college whose diploma he presented as evidence of that fact was a medical college in good standing, does not carry with it a vested right in the party to practise medicine in Louisiana. Each State acts independently of the other in this matter.

8. A person who has been practising medicine as a physician for a number of years without objection is not exempt from complying with legislation of a later date, making it a condition precedent to any one's practising medicine that he should have been examined by a medical examining board and found to have the qualifications required by law for so doing.

O N APPEAL from the Twenty-first Judicial District Court for the Parish of Jefferson. *Rost. J.*

---

Board of Medical Examiners vs. Fowler.

---

*E. T. Florance* and *Robt. J. Perkins* for Plaintiff, Appellee.

---

*A. E. Billings, Ambrose Smith* and *H. N. Gautier* for Defendant, Appellant.

---

Argued and submitted April 22, 1898.
Opinion handed down May 16, 1898.
Rehearing refused June 23, 1898.

---

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiffs applied to and obtained from the District Court for the parish of Jefferson an injunction forbidding and enjoining defendant from further practising medicine in any of its departments in this State until he shall have first obtained the certificate provided for under the provisions of Act No. 49 of the General Assembly of the State of Louisiana of 1894. They also prayed that Fowler be cited, and that after due proceenings there be judgment condemning him to pay plaintiffs the sum of one hundred dollars as a penalty, and in addition thereto the sum of fifty dollars as attorney's fees and costs of court and making said injunction perpetual and absolute.

These prayers were predicated upon allegations that Fowler, who resided in the parish of Jefferson, had been for over three months prior thereto practising medicine in the State without having first obtained the certificate required by Sec. 2 of Act No. 49 of 1894. That he had repeatedly prescribed and directed for the use of other persons drugs and medicines for the treatment, cure and relief of bodily injuries, infirmities and diseases.

That said acts were in violation of the laws of this State, particularly of said Act No. 49, and Sec. 14 of said act, as amended by Act No. 13 of 1896.

That under said law, said Fowler was liable to a penalty not to exceed one hundred dollars, and to the payment of attorney's fees not to exceed fifty dollars, for said violations.

Defendant moved to dissolve the injunction for causes declared to be apparent upon the face of the papers and record and want of authority and capacity in plaintiffs, and also upon the ground that the bond and surety furnished was not good and sufficient and such as the law required.

He also excepted to plaintiff's demand on the grounds:

1. That they were without authority or capacity to institute the suit.

2. (Under reservation.) That the allegations of the petition were too vague and indefinite for him to safely answer.

3. That the allegations of the petition disclosed no cause of action.

4. That Act No. 49 of 1894 is in violation of Arts. 1, 5, 7, XI, 29 *et seq.* of the Constitution, and is therefore null and void.

5. *That Act No. 13* of 1896 is in violation of Arts. 1, 5, 7, XI, 29, 46 and 47 of the Constitution, and is therefore null and void.

The motion to dissolve and the exceptions filed were overruled.

Defendant answered, pleading first the general issue. Further answering, he denied that he had at any time violated the provisions of Act No. 49 of 1894 or the acts amendatory thereto. He specially denied that any of the provisions and prohibitions of the said laws and acts alleged were in any wise applicable to him. In the event that said acts be construed and held as a prohibition to the practice of medicine and surgery in any branch or school of medicine other than that of the allopathic or homeopathic, without a diploma from an allopathic or homeopathic institution, or without previous examination by the plaintiff's medical board of examiners, or in the event it should be held that the plaintiff's medical board of examiners are qualified and authorized to determine and pass upon the ability, competency and qualification of practitioners of such *other* branch or school of medicine, and especially of respondent, he averred that such construction and holding as regards practitioners of such *other* school of medicine, particularly as regards this respondent (holder of a diploma from a reputable institution of the Eclectic school of medicine), and as regards practitioners anterior to the said legislative enactments or laws, would, in fact, be holding and giving to said laws the unconstitutional effect of discriminating between persons engaged in the profession of medicine and surgery and would be depriving this respondent of his constitutional rights and privileges. Defendant further averred that such construction and holding as regards said laws would and does make the provisions and prohibitions thereof effectively applicable to him and thereby violates all rights, privileges and immunities guaranteed him and vested in him by the Constitution of this State and of the United States, specially as regards his privileges and immunities of citizenship and

86

operates as and is an unjust and illegal discrimination between citizens of different States and of the same State—is class legislation, and specially violative of the Bill of Rights of the State Constitution and of Sec. 2 and of Art. 4 of the Constitution of the United States as well as of the Fourteenth Amendment of the Constitution, and among other things in this, that it deprives respondent of his property and liberty without due process of law, and he alleged that said acts were *ultra vires*.

He averred that said Act No. 49 of 1894, and those amendatory thereof, should not and could not apply to him and could not be invoked by plaintiffs to prohibit and enjoin him from practising medicine and surgery in the State of Louisiana.   That the depriving him of the rights, privileges and immunities inherent to his citizenship and the maintaining and perpetuation of the injunction which had issued, or the rendition of a judgment in favor of plaintiffs, would cause him great and irreparable injury to an amount hard to estimate, but surely in a sum far in excess of ten thousand dollars, and would be depriving him of his property and liberty without due process of law.   He prayed that there be judgment in his favor and against plaintiffs, decreeing respondent entitled to practsie medicine and surgery in this State, and dissolving the injunction, and dismissing plaintiffs.

Defendant filed a supplemental answer in which he averred that he was expressly exempted from the provisions and penalties of Act No. 49.   He further alleged that notwithstanding the provisions of that act he was entitled, under the Constitution and laws of the United States, to a trial by jury, and for such trial he prayed on conforming to the requirements of law relative to such trials.

The prayer for a trial by jury was refused under the provisions of Acts No. 49 of 1894 and No. 13 of 1896.

To this ruling defendant reserved a bill of exceptions.

The District Court rendered judgment in favor of the plaintiffs, making the injunction perpetual and decreeing that defendant be enjoined from practising medicine in any of its departments until he should have received the certificate required by Sec. 2 of Act No. 49 of the acts of 1894.   It further condemned defendant to pay a fine of one hundred dollars, and, in addition, fifty dollars for attorney's fees and costs.   On February 5, 1898, defendants applied for and obtained a suspensive appeal from the judgments of

the court overruling his exceptions, and from the final judgment in the case.

In the Supreme Court defendant assigned as error of law and cause of nullity of the judgment appealed from that Act No. 49 of 1894, known and designated throughout its parliamentary progress as Senate Bill No. 90, did not receive the readings on three different days in each house of the General Assembly, as required by the mandatory provisions of Art. 37 of the Constitution, but was passed by the Senate in disregard and violation thereof; all of which was shown by reference to the constitutional and official record and journals of the Senate. That Act No. 13 of 1898 was unconstitutional, for the reason that it only purports to amend and re-enact Secs. 14 and 19 of said Act No. 49 of 1894; that same is not self-operative or enforceable, but is entirely dependent upon the provisions of said Act No. 49 in its entirety for legal validity and effectiveness; that being based upon an outgrowth of and inseparable from said Act No. 49, which is null and void, said Act No. 13 is of and by itself without legal force or vigor.

## OPINION.

Appellant attacked in this court the constitutionality of Act No. 49 of 1894 on the ground that in its passage Art. 37 of the Constitution was not complied with. He had attacked its constitutionality in the District Court, but upon other grounds. In *State of Louisiana vs. Widow De St. Romes, 26 An. 754,* we held that the constitutionality of a law would not be considered where an issue to that effect has not been raised in the case below. The same rule applies to cases where special grounds of unconstitutionality are set up for the first time in this court, and particularly those where an examination of evidence would be needed for a decision of the question submitted. We have, however, examined the Journal of the Senate proceedings for the year 1884, and find that an act was introduced in the Senate on the sixth day of the session by Mr. Avery, having the same title as that which Act No. 49 of 1894 now bears. It was introduced as *Senate Bill No. 23,* read by its title, and placed upon the calendar for second reading. On the seventh day it was taken up under a suspension of the rules on its second reading, read by title, and referred to the Committee on Health, Quarantine, Drainage and Charitable Institutions. On the eighteenth day that

committee, through its chairman, reported *Senate Bill No. 23*, by Mr. Avery favorably by substitute. On the nineteenth day, we find in the Journal, under the heading of Senate Bills on second reading reported on by committees, the following: " *Senate Bill No. 23*, by Mr. Avery: ' An Act to regulate the practice of medicine, surgery and midwifery, to create,' " etc. (giving the exact title of Bill No. 23).

"Reported favorably by substitute by the Committee on Health, Quarantine, Drainage and Charitable Institutions."

" The bill was read by title."

"On motion of Mr. Currie, the substitute was adopted in lieu of the original bill, and becomes Senate Bill No. 90."

" By committte :"

" An act to regulate the practice of medicine, surgery and midwifery; to create," etc.

" The bill was read by title."

A comparison of the title of the bill reported as the substitute for *Senate Bill No. 23* with the title of the latter, shows that they were identical. On the twentieth day, *Senate Bill No. 90* reported by the committee was put upon its third reading. The bill was read in full. Mr. Avery moved the final passage of the bill; the roll was called and the bill was finally passed. Mr. McCarthy moved to reconsider the vote by which the bill was finally passed, and on his own motion, the motion to reconsider was laid on the table. Appellant's contention is that Senate Bill No. 90 must be taken and considered as an original bill, and that it should have been read in the Senate three times and on three different days, once in full.

Article 29 of the Constitution requires that every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in its title. As Senate Bill No. 23 was reported back favorably by the committee under the same title which it had when sent to it, it is very evident that the body of the act as presented to it, must have been found by it conformable to the requirements of Art. 29. That is to say its provisions must have been considered as embracing but one object, and that object was expressed by its title. When the committee reported back the bill under the identical title, it is clear that if any changes in the bill had been made in committee, they must have been of a character such as in the opinion of the committee were germane to and consistent with the provisions in the

body of Senate Bill No. 23 under the original title. Had this not been the case the substitute reported would necessarily have been made to bear a different title in order to make it conform to the changes.

We are bound to assume (as there is nothing to show to the con- trary) that the provisions in the body of Senate Bill No. 23 fulfilled the requirements of Art. 29 of the Constitution, and fell properly under the title, and if the provisions of Senate Bill No. 90 (Act No. 49 of 1894) would also properly fall under the same title, then the provisions of both must be substantially alike, and germane to each other. What was reported as a substitute must have been not a new and different bill as claimed by appellant, but the old bill with imma- terial alterations, or amendments. We do not think that the mere fact that the bill as sent to the committee may have been to some extent amended or modified by it (but not to an extent sufficient to place it legally outside of its original title) and that the committee should have thought proper to designate the bill so reported back, a "substitute" for the original bill, that that fact should make it other than the original bill amended or revised, or made over to make it conform as a whole to amendments already adopted. We find no ground for saying that Act No. 49 of 1894 was not passed in con- formity with Act 37 of the Constitution.

Appellant's next contention is that Act No. 49 of 1894 is violative of Art. 29 of the Constitution in that it embraces more than one object, and that not expressed in its title.

An article corresponding with our Art. 29 is to be found in the constitutions of a number of our sister States and has been the sub- ject of repeated judicial decisions. The decisions are substantially alike. The Supreme Court of South Dakota, in State vs. Morgan (48 N. W. 316), has reviewed very fully the jurisprudence on the subject, quoting very freely from the opinions of different courts. From among those quotations we make use of the following:

The Supreme Court of Michigan, in People vs. Mahoney (13 Mich. 494), said: "The history and purpose of this constitutional provi- sion are too well understood to require any elucidation at our hands. The practice of bringing together in one bill subjects diverse in their nature and having no necessary connection with a view to combine in their favor the advocates of all and thus secure the passage of several measures, no one of which could succeed upon its own

merits, was one both corruptive of the legislator and dangerous to the State. It was scarcely more so, however, than another practice also intended to be remedied by this provision, by which through dextrous management clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. This course was not designed to embarrass legislalation by multiplying the number of bills, but it was intended to put an end to vicious legislation which was little better than a fraud on the public and to require that in every case the proposed measure should stand upon its own merits. Judge Gardiner, of New York, says " that the purpose was that neither the members of the Legislature nor the public should be misled by the title. Insurance Co. vs. Mayer, 8 N. Y. 214. Judge Cole, of Wisconsin, says " that the design and purpose of the provision was obviously to prevent the mischief of uniting together in the same bill various objects which had no necessary connection with each other, and in order to guard the Legislature and the community affected by the law against surprise and imposition." Durkee vs. City of Janesville, 26 Wisconsin, 697. The Supreme Court of Iowa says: " The intention of the provision of the Constitution was to prevent the union in the same act of incongruous matter and of objects having no connection, no relation, and with this it was designed to prevent surprise in legislation by having matter of one nature embraced in a bill whose title expressed another. State vs. Judge, 2 Iowa, 280; State vs. Silver, 9 Nevada, 227. And similar expressions may be found in many reported cases. St Louis vs. Tiéfel, 42 Mo. 578; Mayer vs. State, 4 Ga. 38; Davis vs. State, 7 Md. 151. Judge Cooley in his work on Constitutional Limitations says: " It may therefore be assumed as settled that the purpose of these provisions was first to prevent " hodgepodge," or " log rolling " legislation, second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation and which might, therefore, be overlooked and carelessly and unintentionally adopted; and third, to fairly apprise the people through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered in order that they may have opportunity of being heard thereon by petition or otherwise if they so desire. The Dakota Court, taking up itself a discussion of this ques-

tion, said: '' It will thus be seen that thecourts with great una-
nimity enforce the constitutional provisions in all cases falling within
the mischiefs intended to be remedied.   Upon a critical examina-
tion of these cases, however, it will be seen that whileit is necessary
to construe this provision so as to prevent the evils intended to be
met, yet it is desirable to avoid the opposite extreme so as not to
embarrass the Legislature in the legitimate exercise of its powsrs and
compel a needless multiplication of bills designed to meet the same
object.   The court says in the case of State vs. Miller, 45 Mo. 497:
'' The courts in all the States where a like or similar provision exists
have given it a liberal interpretation and have endeavored to
construe it so as not to limit or cripple legislative enactments any
further than what was necessary by the absolute requirements of the
law.''   The objections to an act upon the ground that it embraced
more than one subject and that it was not sufficiently expressed in
its title should be grave, and the conflict between the statute and
Constitution plain and manifest, before courts would be justified in
declaring it unconstitutional and void.   The constitutional clause
under consideration is that no law shall embrace more than one
subject, which shall be expressed in its title.   In some of the State
Constitutions the word '' object '' has been used instead of '' subject.''
In the construction of this clause, the courts have used the words as
synonymous, which strictly speaking is not so.   The '' subject '' of
a statute is a matter of public or private concern for which the law
is enacted; the '' object '' is the aim or purpose of the enactment.

The constitutional requirement in our Constitution is addressed to
the subject.   This subject must be single.   The provisions of the act
must all relate directly to the same subject, have a natural connec-
tion, and not be foreign to the subject as stated in the title.   The
title must state the subject of the act, for the information, not only
of the Legislature, but of the public generally.   When the title of a
legislative act expresses a single subject or purpose which is single,
all matters which are naturally and reasonably connected with it,
and all measures which will or may facilitate the accomplishment of
the purpose so stated, are germane to its title.   There is no consti-
tutional restriction as to the scope or magnitude of the single subject
of a legislative act.   It has been held that an act to establish the gov-
ernment of the State embraces but a single subject or object, yet it
includes all its institutions, all its statutes.   In Bowman vs. Cockrill,

6 Kas. 311. the court says: "The unity of such an act covering the multiform concerns of a commonwealth is the congruity of all the details of 'one stupendous whole' of one government. That is the grand subject of such a statute or system of laws; it is equally the object of all its varied titles of chapters and sections, Such is an act creating municipal corporations. Such a statute creates the corporate entity, invests it with and regulates the exercise of the necessary legislative, taxing, judicial and police powers. It embraces but one subject. The separate provisions granting, defining and regulating these powers are but parts of a whole and essential to make a whole—a municipality. Harris vs. People, 59 N. Y. 599; Mentclair vs. Ramsdell, 107 U. S. 147; Sup. Ct. Rep. 39; Grover vs. Trustees, 45 N. J. Law, 399. One act may define all the crimes and provide the procedure in prosecutions. Each crime is distinct; the practice is distinct; but all the provisions of such act are congruous parts of a larger subject, which is an entirety. State vs. Brassfield, 81 Mo. 151, 161. Whatever may be the scope of an act lt can embrace but one subject, and all its provisions must relate to that subject. They must be parts of it, incident to it, or in some reasonable sense auxiliary to the object in view. This constitutional requirement is addressed to the subject, not to the details of the act. That subject must be expressed in the title. The subject must be single. The provisions to accomplish the object involved in that subject may be multifarious. It is not enough that the act embraces but one subject and that all its parts are germane, but the title must express the subject, and comprehensively enough to include all the provisions in the body of the act. The title need not index all the details of the act. It is sufficient if the language used in the title on a fair construction indicates the purpose of the Legislature, so that making every reasonable intendment in favor of the act it may be said that the subject of the law is expressed in the title. As said by the Supreme Court of Illinois in the case of Johnson vs. People, 83 Ill. 436, the Constitution does not require that the subject of the bill shall be specifically and exactly expressed in the title; hence we conclude that any expression in the title which calls attention to the subject of the bill, although in general terms, is all that is required. The Constitution authorizes one subject and any number of matters, provided they have any natural or logical connection with each other in legislation."

The title of Act No. 49 of 1894 is:

"AN ACT

to regulate the practice of medicine, surgery and midwifery, to create State Boards of Medical Examiners and to regulate the fees and emoluments thereof; to prevent the practice of medicine, surgery and midwifery by unauthorized persons, and to provide for the trial and punishment of violators of the provisions of this act by fine or imprisonment, or both, and to repeal all laws or parts of laws in conflict or inconsistent with this act."

Defendant's contention on the subject of the unconstitutionality of the act as violative of Art. 29 of the Constitution is thus stated by his counsel in their brief:

" Title Act No. 49 embraces more than one object. The creating of a 'Board of Medical Examiners' is not the regulating of board's authority and power; to create is not to authorize and empower." To prevent the practice by unauthorized persons and to create the Medical Board and to define and provide for the punishment of a crime have nothing in common with the regulation of the practice of medicine.

To prevent and to create and to punish are entirely different objects from that to regulate. To regulate implies that the business or profession may be carried on subject to established methods. To create is to establish; to give birth; to put into existence. To prevent is to prohibit the business or profession to be engaged in or carried on entirely or partially. The purposes are incongruous.

Section 2 of the act recognizes two distinct schools of medicine with Board of Examiners for each, ignoring the Eclectic School or system, which is opposed to the homeopathic and allopathic systems.

Section 5, Act. 49. Provides fer fees of Board of Health and returns by Clerk of Court.

Section 9. For recording certificates by clerks of District Courts and fixes fees and duties of Board of Health.

Section 10. Provides for duty of Board of Health in regard to publishing physicians' names.

Section 12. For penalty by imprisonment and fine in re to itinerant vendors.

Section 13. Changes rules of evidence in violation of Constitution,. Art. 46.

Section 17. Provides for exceptions in re physicians.

*Section 18.* Provides certain duties of the board.

*Section 19.* Apply to liability of the State.

None of these provisions are susceptible of being reasonably construed as a regulation of the practice of medicine in that they provide for matters distinct from the practice of medicine. Some whereof are not germane to the subject matter. Act No. 49, as amended, and its title prescribes for two classes of people; for those authorized to practise medicine and those *unauthorized*—two distinct and dissimilar classes, as distinct and unlike as two objects can be.

The generality of the title of an act is no objection, provided, only, that it be fully sufficient to give absolute notice of the subjects of the legislation, and its provisions unmistakably germane; but though the title and the law may both refer to the same general subjects, yet if the title uses a term which describes a totally different branch of the subject from that dealt with in the body of the act, the act is void for that reason. For example, to entitle an act "to regulate the traffic in intoxicating liquors," and then in the body of the act to *prohibit* such traffic, is not complying with the constitutional requirements. (*In re* Hauck, 38 N. W. 269.) "

Testing the title of Act No. 49 and the provisions contained in the body of the act by the views expressed in the opinions of the different courts from which we have quoted (which are in accor- with those entertained by this court, and which have been heretofore announced in our decisions) we are of the opinion that the attack made by defendant upon the constitutionality of that act is not well founded. The object of an act is single, though the instrumentalities which the General Assembly may deem necessary to carry it into successful operation may be many and of different kinds. Subsidiary details which are enacted as means for carrying into effect the purpose of the act do not create a plurality of objects in it. It has been constantly held that the constitutional provision permits an announcement of the object of an act in general terms, and in order to facilitate legislation, that a very liberal construction should be given to all matters which are pertinent or germane to the subject of the enactment.

"The object of an act expressed in the title includes not only all matters which are constituent parts of it, but all matters directly incidental to it. *Plankroad vs. Hannaman, 22 Ind. 484; City of St. Louis vs. Green, 7 Mo. App. 468; Canal Co. vs. Bright, 8 Colorado, 144; 6 Pac. Rep. 142; English vs. State, 7 Texas App. 171.*

"An act to regulate specific business may prescribe penalties for violation of the act. *Insurance Co. vs. Commissioners*, 70 Mich. 485 (38 N. W. 474); *Weil vs. State*, 46 Ohio, St. 450 (21 N. E. 643); *Sykes vs. People*. 127 Ill. 177 (19 N. E. 705); *State vs. Stunkle*, 41 Kas. 457 (21 Pac. 675).

"A statute embracing only one general subject indibated by its title is constitutional, no matter how fully it may enter into the details of that subject. Turnpike Co. vs. Fletcher, 104 Ind. 97 (2 N. E. 243); Canal Co. vs. Bright, 8 Colorado, 104; People vs. Goddard, 8 Colorado, 432 (7 Pac. 301)."

The act in question has but one single object, the protection of the public from the consequences of the practising of medicine in its different branches by unskilled and incompetent persons. The singleness of that object is not broken by the designation in the title of the act of certain branches of medicine as being intended to fall under, and as falling under the provisions of the act. These branches are, in fact, but fractional parts going to make up the whole subject matter at which the act is openly and publicly aimed, or so much of it as the General Assembly considered dangerous. Lucky vs. Police Jury, 46 An. 686. The various sections of the act have all direct relation to the enforcement of the purpose announced by the act. The moment that they have been found to bear legal relation to the same our inquiries cease and our duty ends, for it is the province of the Legislature and not the courts to determine which are the best and wisest methods which should be adopted for accomplishing the desired end. State *ex rel.* Mouton vs. Judge, 49 An. 1537; State vs. Slaughterhouse and Refrigerating Company, 46 An. 1034.

The claim that Act No. 49 is unconstitutional because it is a special law which is prohibited from being enacted by the General Assembly, under Art. 46 of the Constitution, is not well founded. A law upon a special subject is not necessarily a special law. The law in question is a general law, though bearing upon a special subject.

The attack upon the constitutionality of Act No. 13 of 1896 rests principally upon the belief that defendants would succeed in this suit in having Act No. 49 of 1894 declared null and of no effect. In that event it was argued that the latter act would fail with it, inasmuch as it was merely an act amendatory of the former and dependent for its own existence upon that which it sought to amend.

The opinion we have expressed as to the constitutionality of Act No. 49 of 1894 disposes of the question from that standpoint. We find nothing in the title or body of Act No. 13 of 1896 which would justify us in declaring it unconstitutional as violative of Act No. 29 of the Constitution. State vs. Slaughterhouse and Refrigerating Company, 46 An. 1032; State *ex rel.* Mouton vs. Judge, 49 An. 1537.

The appellant, in arguing upon his contention of the unconstitutionality of *Act No. 49 of 1894* as being violative of Arts. 1, 5, 7, 11, 30 *et seq.* of the Constitution, does not come down to specific objections to the law as being antagonistic to any one of the articles, but claims that certain general constitutional principles are deducible from them to which the provisions of Act No. 49 are directly opposed. " He maintains that every citizen has the constitutional right to obtain a livelihood; that the Legislature is without power to cut any one off from doing so by statute; that the prescribing for and alleviation of the sufferings of the sick is a praiseworthy and lawful occupation which the General Assembly can not prohibit a person from pursuing, especially under the guise of mere regulation; that the *Eclectic School of Medicine* is as much entitled to legal recognition as are the *Allopathic and Homeopathic Schools;* that the Legislature has no legal right to ignore it or discriminate against it in favor of the other schools; that it has no right to force a person who is proficient and skilful as a practitioner in the Electic School to have his qualifications examined into and passed upon by examining boards composed entirely of Allopathic and Homeopathic physicians; that when a person's qualifications as a physician have been tested by the laws of another State, and he has been pronounced qualified and admitted by the constituted authorities thereof to practise medicine in that State, as holding a diploma from a reputable medical institution, he has acquired a vested right to practise, which follows and protects him in the exercise of his profession in the other States of the Union. That, if a person with such a diploma and so recognized as qualified, removes to another State, and there practises medicine for some time as a physician, his right to further do so can not be taken away from him by a statute subsequently passed, as it would deprive him of his property or right to make a lawful living without due process of law; that the Legislature was without power to stop him in his practice, and make further continuance dependent upon his obtain-

ing and exhibiting a certificate of qualification from a medical board of examiners; that the Legislature was without power to constitute the pursuing of a worthy and praiseworthy calling a misdemeanor." There can be no question of the right of every citizen to earn a living. Any statute attempting in general terms to prohibit a person from doing so would be utterly null and void.

There is a very great difference, however, between so radical and sweeping a prohibition and a prohibition extending either absolutely or conditionally to certain specified pursuits which the legislative branch of the government, as guardians of the public good and general welfare, should declare dangerous to the community, and necessary for that reason to be either entirely suppressed or exercised only under certain circumstances, conditions and limitations.

*Article 2626* of the Civil Code declares that "the first law of society being that the general interest shall be preferred to that of individuals, every individual who possesses under the protection of the law any particular property is tacitly subjected to the obligation of yielding it to the community whenever it becomes necessary for the general use." The same principle finds expression in Art. 491 of the Civil Code, which declares, relatively to the ownership of property, that perfect ownership gives the right to use, to enjoy and to dispose of one's property in the most unlimited manner, provided it is not used in any way prohibited by law or ordinances. The necessity of subordinating individual rights of one person to the extent necessary for the protection of the rights of others is announced also in Arts. 666 and 667 of the Code. Whenever the pursuit of any particular occupation or profession requires for the protectition of the lives or health of the general public, skill, integrity, knowledge or other personal attributes or characteristics in the person pursuing it, the General Assembly has the power and the authority to have recourse to proper measures to ensure that none but persons possessing these qualifications should pursue the calling. We find this right constantly put in force by the general as well as the State governments. Masters of boats, engineers, mates, pilots, attorneys at law, and others are required as conditions precedent to pursuing their respective business or profession to have their qualifications tested. The medical profession, upon whose skill is so much dependent the lives and health of others, is and should be as much subject, if not more, to legislative

control in this matter as are the occupations above mentioned. There is no more natural, absolute right in a person to practise medicine or surgery than there is to practise law. What is claimed to be a natural or absolute right is nothing more than a privilege or a right upon conditions. The Legislature of this State has not attempted to suppress or prohibit the practise of medicine or surgery, nor to prohibit any particular person from practising as physician or surgeon. The field is open to every one possessing the necessary qualifications for that purpose; these qualifications to be passed upon by public agencies provided by the Legislature. The General Assembly having the undoubted right to attach as a condition precedent to the privilege or right of any one to practise medicine in this State that he should be subjected before doing so to a prior examination as to his qualifications and found and declared worthy and qualified, it has as a consequence the right to select the particular agencies to which should be delegated the right and duty of testing those qualifications. It can not resolve itself into an examining board, and must, of necessity, act through delegated authority. Courts can not control the selection of these agencies by the General Assembly. The Legislature has not dealt with the Eclectic School of Medicine and discriminated against it; it has simply selected as examiners, as it had the constitutional right to do, boards of examiners composed of physicians recommended for appointment by two certain named medical societies and appointed by the Governor on such recommendation. It has required that a person before practising medicine in the State should present to the boards mentioned a diploma from a medical college in good standing, but it has not attempted to declare and fix what constituted a medical college, nor what particular colleges, nor classes of colleges were to be considered as "medical colleges in good standing." There must, of necessity, be some tribunal to which should be left the decision of those questions primarily, at least. The fact that in some particular instance a board should have improperly rejected an application made it for the issuing of a certificate to practise might possibly give rise in case of abuse to a right of action for correction, but the possibility of such misconduct would certainly not go to the extent of rendering unconstitutional the law under which the board was created.

We know of no constitutional right given to particular persons

who, entertaining peculiar theories of medicine, group themselves together and call themselves a special school of medicine, under a selected name, to be recognized as and dealt with as such.     An indefinite number of schools of medicine might claim recognition, with no fixed ascertained standard to pass upon their pretensions. Plaintiff's claim that recognition of his qualifications by the constituted authorities of another State, under a decision by them that the medical college whose diploma he presented was a medical college in good standing, carries with it a vested right in him to practise in this State, has no legal basis on which to rest.   The laws of other States in respect to this matter and the action of local officers under those laws have no force in themselves in this State.   Each State acts independently of the others in matters of this character. Attorneys practising law in other States under diplomas from institutions recognized there as having authority to grant them are not entitled simply by reason of that fact to practise law in Louisiana. There is no reason why the rule should be different as to physicians.

The claim made that defendant was protected from legislation, making it obligatory upon him, before continuing to further practise his profession in Louisiana, to procure a certificate from the medical boards organized under the act of 1894, because he had been for several years in active practice, without objection, before the passage of the law, is not tenable.   The fact that the Legislature had not, before the year 1894, considered the practice of medicine by persons not possessing qualifications fixed by a legal standard, a matter productive of sufficient mischief or injury as to call for the enactment of a statute, did not prevent it from passing one when, in its opinion, such a law had become necessary.   We are not called upon to say what defendant's rights would have been had he, before the present law was passed, been expressly authorized to practise, through compliance by him with the provisions of a prior existing law granting such right.   That question does not arise in this case, for it is not claimed that defendant occupied such a position or *status* under our prior law.

Defendant's contention that the General Assembly was without authority to constitute as a misdemeanor the pursuit of any legitimate and proper calling is answered by the fact that it is not the pursuit of the calling which is prohibited and made criminal, but the pursuit of the same by unauthorized persons.   The General Assem-

bly having the authority to attach prior conditions to the practice of medicine, was vested with the right to enforce enactments on that subject by prescribiag penalties for violations of the same, either by fine, by imprisonment or by civil remedies.

The right to practise medicine being conditioned by law upon the prior obtaining of a certificate from a medical board, under Act No. 49 of 1894, plaintiffs were clearly authorized, when they had reason to believe that defendant was violating the law in this respect, to test the facts of the case through injunction. Whether or not the injunction taken out would be justified would depend upon the facts as disclosed by the evidence. The right to practise being dependent upon a condition precedent, it was defendant's duty, when his right was called in question, to show that he was acting under legal authority.

Coming to the merits of the case, we find the issue before us a very limited one. We are not called on to say whether the college whose diploma defendant holds is " a medical college in good standing " or not, nor to say whether defendant has, in point of fact, the qualifications necessary to entitle him to obtain a diploma from " a medical college in good standing." Those questions are not closed by the judgment below, and they will remain open for examination and decision hereafter by the medical boards organized under Act No. 49 of 1894. The question befor us is simply whether defendant prior to the issuing of the injunction which issued herein was practicing medicine in the parish of Jefferson before obtaining the certificate required by Sec. 2 ·of Act No. 49 of 1894, and if so, whether he was justified in so doing as falling under any of the exceptions provided for in the act.

We think it is conceded that defendant was so practising medicine without a certificate. Independently of this, however, the evidence and the line of defence set up both establish this fact. The evidence fails to show defendant to be protected by any of the exceptions of the act. Under these conditions, the law attacked being constitutional, its provisions control the case and the judgment must be affirmed. We note in the minutes of the Medical State Board, offered in evidence herein, an entry to the effect that " Dr. Fowler, from Gretna, had diploma from fraudulent college, and was denied the right to go before the board." In respect to this matter we think it not amiss for us to say that there exists no authority in any one to prevent the

defendant from going before the board by a prejudgment that the diploma under which he claims to be entitled to practise is not from a " medical college in good standing," but a fraudulent college.

It is the duty of the Medical Board to receive and pass upon all applications made to it on evidence submitted to them in each case.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.