(38 South. 478.)

No. 15,448.

BROWNE v. TOWN OF PROVIDENCE et al.

(March 27, 1905.)

MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW.

1. When the object of a statute is to cover and dispose of the whole of the subject-matter of municipalities, the fact that, in consideration of that subject, different classes of municipalities may have to be dealt with, does not break the force of the singleness of the object of the law.

2. The title of a statute, which is sufficient to cover all the matters and things enacted in the body of the law, is not made defective if some one or more of those matters are unnecessarily mentioned therein.

3. The power and authority conferred upon municipalities extending their limits in manner and form as provided for in Act No. 136, p. 224, of 1898, was granted to municipalities existing at the date of the enactment of that statute, as well as to those which might be created thereafter. Such authority was an absolute right or power, conferred at once, without the necessity of such existing corporations being forced, as a condition precedent to availing themselves of the same, to have placed themselves under the provisions of the law. Section 43, p. 243, No. 136, Acts 1898.

(Syllabus by the Court.)

Appeal from Ninth Judicial District Court, Parish of East Carroll; Francis Xavier Ransdell, Judge.

Action by E. Wayles Browne against the town of Providence and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Charles S. Wyly and Davis & Browne, for appellant. Joseph M. Kennedy, for appellees.

### Statement of the Case.

NICHOLLS, J. Plaintiff, in his petition, alleged: That he was the owner of certain described lots in the addition to the town of Providence designated and known as the "Brown & Burney Addition to the Town of Providence." That said town was chartered by Act No. 88, p. 134, of the Acts of the General Assembly of Louisiana of 1876, section 8 of which was amended by Act No. 93, p. 144 of the Acts of 1878, in which legislative charter the territorial limits of said town are specifically defined, and have never since been in any wise legally changed. That his above-described property, together with the whole of said Brown & Burney addition, was not situated within the territorial limits of said town, but that said addition, in which

petitioner's property was located, lay outside of and adjacent to the territory now fixed by law as the limits of said town, and was in no manner subject to the jurisdiction of its municipal authorities. That said municipality, through its mayor, T. J. Powell, and its board of councilmen, had, by ordinance bearing date of September 4, 1903, levied upon the taxable property in said town, including petitioner's said property, an ad valorem tax of five mills on the dollar of the assessed valuation. That D. F. Peck, marshal of said town, and ex officio tax collector, had notified petitioner that his said property had been assessed on the municipal tax roll for the year 1903 at a valuation of $250; that petitioner was delinquent for municipal taxes on said property amounting to $1.25; that, unless he paid said taxes and the cost of notice, 25 cents, said tax collector would proceed to advertise and sell said property for said taxes and costs of notice and of advertising.

That on January 3, 1901, the mayor and board of councilmen of said town, by Ordinance No. 224, set out on page 178 et seq. of the ordinance book of said town, attempted to extend the limits of said town as fixed in said legislative charter so as to include within the territorial limits of said town the Brown & Burney Addition. That after said ordinance had been published and posted in the manner and form prescribed by Act No. 136, p. 224, of the Acts of 1898 of the General Assembly of Louisiana, said mayor and board of councilmen adopted, on the 2d day of May, 1901, Ordinance No. 225, set out on page 179 et seq. of the ordinance book of said town, by which ordinance it was ordained that No. 224 should become operative, and that the limits of the town should be extended and established as set forth in said Ordinance No. 224; the said municipality asserting the right and power in said municipal authorities to extend the corporate limits of said town by ordinance as provided in Act

No. 136, p. 224, of 1898, without being required to conform to the requirements of Act No. 105, p. 137, of 1892. That, when said attempted extension of limit by ordinance was made, the said town of Providence was governed by its legislative charter, to wit, Act No. 88, p. 134, of 1876, which did not confer the power to extend its limits by ordinance, and had not elected to come under its provisions as to the power to alter its corporate limits. That no such object was embraced in the title to said act, and, if the body thereof purported to convey such authority, it was violative of article 31 of the Constitution of the state, and consequently inoperative and void. But if it should be held that such power was conferred by the body of the act, and was covered by the title, then in that case petitioner charged that the whole act was violative of said article 31, and void, inasmuch as said act then embraced more than one object.

That said ordinances Nos. 224 and 225 were each wholly illegal, null, and void. That all the proceedings of said municipal authorities in attempting to make such extension of the territorial limits of said town solely by ordinance were ultra vires, illegal, null, and void. That the present legal limits of said town were now as fixed in said legislative charter, notwithstanding said authorities, in attempting such extension of limits by ordinance, acted in conformity to said Act No. 136, p. 224, of 1898, for the reason that said Act No. 136 was unconstitutional, and therefore the levy of such tax upon petitioner's property was illegal and unconstitutional.

That, acting under the instructions and orders of said mayor and board of aldermen, the said Defender F. Peck, marshal and municipal tax collector as aforesaid, would proceed to advertise and sell petitioner's property to collect said illegal taxes and costs, and petitioner would thereby be irreparably injured, unless said proceedings were re-

strained by injunction. That, by being compelled to resort to proceedings to protect his rights in the premises, he had been damaged in the sum of $25, general damages, and in the further sum of $25 for attorney's fees.

Petitioner prayed for citation to the town of Providence and the marshal and ex officio tax collector, and that a writ of injunction issue, enjoining them from taking any further proceedings in the collection of the said municipal tax upon his property, and that there be judgment decreeing the tax to be illegal and unconstitutional, and Act No. 106, p. 153, of 1898, unconstitutional, and the Ordinances Nos. 224 and 225, referred to in his petition, to be ultra vires, illegal, null, and void, and decreeing that his said property was outside of the territorial limits of the town of Providence, and not subject to taxation by said town, and perpetuating the injunction which issued as prayed for.

Defendants answered, pleading first the general issue. They admitted that the town of Providence was a municipality originally chartered by Act No. 88, p. 134, of the Acts of the General Assembly of this state of 1876, in which the original territorial limits thereof were specifically set out. They further admitted that in the year 1901 the said town of Providence, acting under and by virtue of the provisions and authority of Act No. 136, p. 224, of the Acts of the General Assembly of this state of 1898, proceeded to extend its territorial limits as set out in plaintiff's petition. They further admitted that at the time said territorial limits were extended under and by virtue of the authority and according to the provisions of said Act No. 136, the said town of Providence had not elected to come under the operation of said Act No. 136, as provided by section 40 thereof, but was still under the dominion of and governed by its aforesaid original charter, section 8 of which had been amended by Act No. 93, p. 92, of 1878; but respondents averred: That said town was fully author-

ized by the provisions of said Act No. 136 to extend its limits, the provisions thereof conferring said power upon existing municipalities not governed by said act (section 43 thereof). That all the steps and proceedings taken and had to effect said extension were in full and strict accordance with the provisions thereof, and operated and effected a legal and valid territorial extension.

That said Act No. 136 was not in conflict with any provision of the Constitution of this state, but, on the contrary, was entirely constitutional, and its passage a valid exercise of constitutional power of the Legislature.

Respondents admitted that the property of plaintiff upon which the tax was levied as set out in his petition was without the territorial limits of said town, as prescribed by its original charter (said Act No. 88, p. 134, of 1876), but they averred that the same was within the limits, as prescribed and established by the aforesaid extension, and was therefore legally subject to municipal taxation of all kinds, and to the tax set up in plaintiff's petition; that the tax was levied on the property of plaintiff by the said town, as set out in his petition, and that the tax collector was proceeding to enforce the same when arrested by this suit; but they averred that the levy of said tax was made with full authority, as above set out; that the same was entirely legal and valid; that plaintiff's said property was subject thereto, and the same should be enforced thereon. In view of the premises, respondents prayed that the injunction sued out herein be dissolved; that the property of plaintiff described and set out in his petition be decreed to be within the corporate limits of the said town of Providence, and subject to taxation thereby; that the tax herein enjoined be decreed to be constitutional, legal, and valid, and be enforced upon said property. And for all such orders and decrees as might be proper and legal on behalf of said town, in the premises. On the trial the following admissions were made:

"Admissions.

"It is admitted by the parties plaintiff and defendant that the tax, the collection of which this suit is enjoining, was levied by the town of Providence, as stated in the petition, and that the tax collector of said town was proceeding to collect the same on plaintiff's property, as set out in petition, when arrested therein by this suit.

"It is admitted by said parties that the said property of plaintiff is situated without and beyond the corporate limits of said town of Providence, as established by said Act No. 88, p. 134, of 1876, but that the same lies within the said corporate limits, as extended by Ordinances Nos. 224 and 225, as set out in plaintiff's petition.

"It is further admitted that the said town of Providence in the year 1901 extended its corporate limits in manner and form as set out in plaintiff's petition, and that in doing so it acted solely under the provisions of Act No. 136, p. 224, of 1898, and not under the provisions of Act No. 105, p. 137, of 1892, of the General Assembly of the state of Louisiana.

"It is further admitted that, in the proceedings claimed by said town to have effected a legal extension of its boundaries, the said town proceeded strictly in compliance with the provisions of said Act No. 136, p. 224, of 1898, and that all of said proceedings were in full and strict compliance with the same.

"It is further admitted that if said Act No. 136, p. 224, of 1898, is not in conflict with any provisions of the Constitution of this state, and conferred upon said town of Providence the authority to extend its corporate limits thereunder, then and in that case plaintiff's said property was within the corporate limits of said town, and subject to the tax enjoined.

"It is further admitted that when the said town attempted to or did extend its limits under said Act No. 136, p. 224, of 1898, as set out in the petition, it had not voted to come under the provisions of said act, and no election had been held for that purpose."

The district court rendered judgment in favor of the defendants against the plaintiff, dissolving plaintiff's injunction, and rejecting his demand, and ordering the collection of the tax enjoined to be proceeded with. Plaintiff appealed.

### Opinion.

Under the pleadings in this case and the admissions made by the parties, the issues submitted to us for decision lie within a narrow compass, and our action in this matter is expressly limited to them.

The first question is whether the General

Assembly intended Act No. 136, p. 224, of 1898, entitled "An act for the creation and government of municipal corporations throughout the state and defining their powers and duties and providing for the extension or contraction of their powers," to confer at once and absolutely upon municipal corporations then in existence under legislative charters the right of enlarging their boundaries as provided for in section 3 (page 225) of that act, or whether their right to avail themselves of those provisions was conditioned upon their having, prior to their doing so, determined after the enactment of the act to come under its provisions, by a majority vote of the electors therein.

It is contended by the plaintiff that, under section 40 of the act, until such existing corporations had voted to be controlled and governed by the act, their corporate powers, rights, and franchises should be and remain as provided by the prior existing law. The defendants urge, on the contrary, that this contention is wrong, as will appear by the forty-third section (page 243) of the act, which expressly declares that a municipality not governed by the act may change its corporate limits under the provisions thereof, and by the forty-fifth section (page 244), which repeals all laws contrary to its provisions or on the same subject-matter, except as herein provided.

Counsel of the plaintiff, in their brief, use the following language:

"We construe the provisions of Act No. 136 relative to the change of limits to apply to corporations which have been created in the first instance under the provisions of the act, and that by section 43 the General Assembly intended to extend those provisions to those pre-existing municipalities not governed by the act which have elected to be governed by its provisions. It certainly did not intend to confer upon a municipality a power to extend limits under the provisions of the act 'after its rejection of the provisions of this act,' or until its acceptance thereof. The last sentence of section 43, read in connection with section 40, simply means that pre-existing municipalities not before governed by the act could, by electing to be governed by it, extend their limits by ordinance as

provided for municipalities created under the act."

We think the object and purpose of the General Assembly was, through the statute, to take charge and control of the whole subject-matter of municipal corporations—those already existing and those thereafter to exist under the law.

The purpose of the act to deal with existing municipalities as well as those to be thereafter created is shown by the first section, where, all municipalities are classified by the rule therein provided by the 13th, 16th, 17th, 32d, 40th, 41st, 42d, and 43d sections of the act. Every municipality which should be created after the enactment of the act falls under the provisions of the act. They have no reserved right of acceptance or rejection. The declaration made in the forty-third section that "a municipality not governed by the act may change its corporate limits under the provisions of the act" make the grant of power as to this particular subject of determining limits an absolute, present right, subject, however, to the right of the parties interested to contest the exercise thereof by the constituted authorities in the manner provided for in the third section of the act. If there was any doubt as to the construction of the statute, by reason of apparent contradiction between the provisions of sections 40 and 43 of the act, the last section of the two would be the controlling section. It is not claimed up to this date that action by any one had been taken, adversely to that of the town's constituted authorities, on the subject of the alteration of the limits, other than the opposition of the present plaintiff, which is based exclusively upon a construction of the law, and upon its constitutionality on specific grounds.

The constitutional question argued has been practically disposed of by the declaration already made herein that by and through Act No. 136, p. 224, of 1898, the General Assembly had taken charge and control of the whole subject-matter of municipalities in the state—those existing as well as those thereafter to exist. There was therefore singleness in the object of the statute. The portion of the act referring to the change of limits or boundaries covered only one of the many different powers conferred upon corporations, and the fact that it may have been stated in the title in no wise enlarged the purposes of the statute beyond its original scope. It could have been left entirely out of the title, and the grant of right or power on the subject contained in the body of the law would have been beyond constitutional criticism. The particular objections urged against the act are, in our opinion, without foundation.

The judgment appealed from is correct, and, for the reasons herein assigned, it is hereby affirmed. State v. Henderson, 32 La. Ann. 781; Am. & Eng. Ency. of Law (2d Ed.) vol. 26, pp. 575, 579, 580, 581; Cooley, Constitutional Limitation, p. 143; Board v. Fowler, 50 La. Ann. 1358, 24 South. 809; State v. Judge, 106 La. 400, 31 South. 14; Bienvenu's Succession, 106 La. 595, 31 South. 193; State v. Ferguson, 104 La. 249, 28 South. 917, 81 Am. St. Rep. 123; State v. De Hart, 109 La. 574, 33 South. 605.