(65 South. 624)

No. 20485.

### STATE v. CENTENARY COLLEGE OF LOUISIANA.

(March 30, 1914. On Rehearing June 8, 1914.)

*(Syllabus by the Court.)*

1. COLLEGES AND UNIVERSITIES (§ 6*)—PROPERTY—ALIENATION.

Public property reserved for educational purposes by the state cannot be alienated, except by action of the Legislature.

[Ed. Note.—For other cases, see Colleges and Universities, Cent. Dig. §§ 6, 11–15; Dec. Dig. § 6.*]

2. COLLEGES AND UNIVERSITIES (§ 6*)—PROPERTY—ALIENATION.

An act of sale of public property, embracing the condition that the property "shall not be appropriated to any other purpose than a

literary institution," has the effect of placing the property out of commerce.

[Ed. Note.—For other cases, see Colleges and Universities, Cent. Dig. §§ 6, 11–15; Dec. Dig. § 6.*]

3. COLLEGES AND UNIVERSITIES (§ 6*)—PROP-ERTY—ALIENATION—ABROGATION OF CON-TRACT.

Where a party accepts title with such con-dition, and, in addition thereto, other condi-tions, and these additional conditions are all removed, including the liability for the purchase price by the purchaser, the contract is abro-gated.

[Ed. Note.—For other cases, see Colleges and Universities, Cent. Dig. §§ 6, 11–15; Dec. Dig. § 6.*]

Appeal from Twenty-Fourth Judicial Dis-trict Court, Parish of East Feliciana; Jo-seph F. Golsan, Judge.

Action by the State against the Centenary College of Louisiana. Judgment for plain-tiff, and defendant appeals. Reversed, and suit dismissed.

Murff, Roberts & Thurber, of Shreveport, for appellant. R. G. Pleasant, Atty. Gen. (G. A. Gondran, of New Orleans, of counsel), for the State.

LAND, J. The state sued the defendant on a mortgage bond for $10,000 of date July 26, 1848, for the purchase price of all the rights, privileges, title, and interest which the state had in and to the College of Louisi-ana, and its appurtenances, situated at Jack-son, La. This transaction was authorized by Act No. 179 of 1848, the second section of which reads as follows:

"That the bond to be given by the trustees aforesaid (of Centenary College) shall bear no interest, nor shall the same be considered as legally due so long as the trustees aforesaid keep the college buildings in good order and contin-ue to provide and keep a regular faculty of arts, and competent teachers for all the stu-dents that may be in attendance. The faculty to embrace the usual number of professors known to colleges in the United States, never to be less than four besides the president, ex-cept when a vacancy shall occur by death, res-ignation, etc., in which case a reasonable time shall be allowed for filling said vacancy."

Section 3 of the act made it the duty of the faculty of said Centenary College to have at all times in said institution, and to edu-cate gratuitously, ten indigent young men to be designated by the Governor of the state.

Section 4 of the act provided that, when-ever the trustees aforesaid shall fail to per-form any of the above conditions, the said bond shall be due, and the treasurer should proceed to collect accordingly, with legal in-terest from the time of such forfeiture.

Centenary College was established in the year 1848, and flourished as an educational institution until its operations were suspend-ed for several years by the great Civil War of 1861–1865. After the close of that strug-gle, Centenary College was reopened, and maintained as an educational institution. In the year 1871, the Legislature passed Act No. 63, p. 167, "entitled an act for the relief of Centenary College of Louisiana," providing as follows:

Section 1: "That in accordance with the condition stated in the original sale of the Col-lege of Louisiana (Act No. 74 of 1845, and Act 113 of 1847) the Centenary College of Lou-isiana shall not be appropriated to any other purpose than a literary institution."

Section 2: "That the board of trustees of said Centenary College shall be * * * relieved from all further and subsequent conditions and liabilities to the state of Louisiana."

It is admitted that Centenary College has been removed to Shreveport, La., and that the trustees were no longer operating an in-stitution of learning at Jackson, La., but were negotiating to sell the property for edu-cational purposes. It is further admitted that the trustees have not kept the buildings at Jackson in good repair.

This suit was filed June 1, 1912. In July of the same year the Legislature passed Act No. 56, p. 67 (a concurrent resolution), au-thorizing the Attorney General to settle this suit by selling to the board of trustees of Centenary College all the right, title, and interest of the state in and to the property

at Jackson, La., known as Centenary College for the price of $2,500, payable by the first Monday of September, 1912. The suit was not compromised on the proposed basis. It is, however, to be noted that in the preamble of the act it is recited that the board of trustees "was exempted from the payment of said bond and mortgage by Act No. 63 of 1871."

There was judgment for plaintiff as prayed for, and the defendant has appealed.

In the answer below the defendant pleaded Act No. 63 of 1871 as a discharge from the obligation of the bond in question. Plaintiff attacks the constitutionality of this act in argument and brief in this court, but raised no such issue by plea in the court below. We therefore cannot consider the question of the constitutionality of said statute. State v. St. Romes, 26 La. Ann. 754; Board of Medical Examiners v. Fowler, 50 La. Ann. 1358, 24 South. 809; Rausch v. Barrere, 109 La. 567, 33 South. 602. The point is so well settled that the citation of other cases is unnecessary.

That it was the intent of Act No. 63 of 1871 to relieve Centenary College of all subsequent conditions and liabilities to the state, except the condition set forth in the first section, is manifested by the use of the words "all further" in the second edition. The words "liabilities to the state" are broad enough to cover the mortgage debt, and all other pecuniary obligations resulting from the sale by the state to Centenary College. This construction jumps to the eye, and was adopted by the Legislature in the preamble of Act 56 of 1912. This construction is reinforced by the silence and inaction of the state for 41 years. The mortgage bond was not preserved in the office of the state treasurer, and the petition alleges that it was lost and cannot be found. If the bond had been considered as a live asset of the state, it probably would have been preserved.

We are satisfied that Act No. 63 of 1871, as the title indicates, was passed to relieve Centenary College, impoverished, doubtless, by the war of 1861–1865, of the burden of its obligations to the state, so that it might survive as one of our oldest educational institutions.

If the college has appropriated the property at Jackson "to any other purpose than a literary institution," the state has a remedy in another form of action.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs.

On Rehearing.

SOMMERVILLE, J. [1] Reference is made to the original opinion herein for a statement of the case.

It appears from the record that the real estate which the state asks to be declared subject to the mortgage which it claims to hold, and which real estate stands on the records in the name of defendant, was, at one time, the property of the College of Louisiana. It was property which had been dedicated by the state to educational purposes. Acts of 1825, p. 152; Acts Nos. 34 and 47 of 1831, pp. 82 and 100; Act No. 179 of 1848. It belonged and it belongs to the school fund of the state; it is public property; it is out of commerce; and it will remain inalienable until the Legislature, by act, directs that it shall not be longer used for the purpose for which it has been dedicated, or for some other public purpose. The Legislature has not so directed; and the Attorney General of the state has not been authorized by the Legislature to have the property seized and sold by the sheriff.

The concurrent resolution of the General Assembly of 1910, known as act No. 147, p. 225, authorizes the Governor of the state to instruct the Attorney General to file such legal proceedings as may be necessary to de-

termine the rights or title of the state in and to the property.

[2] The state, in 1848, was a party to what was termed an act of sale of the property to Centenary College, and the treasurer of the state accepted a mortgage on the property to secure a bond issued by defendant, Centenary College, for $10,000, as representing the purchase price. But the Centenary College was relieved from paying that debt by Act No. 63 of 1871, p. 167; the mortgage fell with the debt; and the bond has been lost. The state cannot collect the debt, since it relieved the college of all conditions and of all liabilities, except that "the Centenary College of Louisiana shall not be appropriated to any other purpose than a literary institution." This restriction evidently has reference to the property of Centenary College, formerly belonging to the College of Louisiana, and which is now the subject of this controversy.

[3] The Attorney General argues that Act No. 63 of 1871, p. 167, violates articles 110 and 140 of the Constitution of 1868, although the record does not disclose whether such issue was urged in the trial court or not. If article 110 be construed to apply to the state itself, it would appear that compensation had been made, in the estimation of the Legislature, for the release of the debt due by the Centenary College to the state. The college did not have a full and complete title to the property; it could not alienate it, for it was reserved by the state to be used for educational purposes. Centenary College had the use of the property without pay of any kind as long as it used it for educational purposes, and educated a certain number of pupils without charge.

It was admitted on the trial that a large number of young men, appointed by the Governor of the state, under the acts of the Legislature relating thereto, were educated by Centenary College without expense to the state for the years 1848 to 1871. The state had received the compensation, in whole or in part, which it had bargained for when it contracted with defendant; and it did not divest itself of any vested right when it relieved the college from its obligation to pay the state $10,000 which the college had conditionally promised to pay, at some indefinite time in the future.

The objection that the act is violative of article 140, which forbids the General Assembly to make appropriations for the support of private institutions of learning, cannot be sustained. Centenary College, while it occupied the state property formerly known as the College of Louisiana, was a quasi public institution, and evidently a part of the school system of the state. It was in possession of property dedicated and reserved for educational purposes by the state; it was obligated to keep the buildings in repair, to have at all times and to educate gratuitously ten indigent young men to be designated by the Governor of the state, not to establish a chair of theology, or make sectarian dogmas a part of its course of study; and it was subject to visitation by a committee of the Legislature. It was not entirely a private institution of learning.

So that in 1871, after discharging its obligations in full to the state for twenty-three years, and after having placed $60,000 worth of improvements on the property, the Legislature had the right to relieve Centenary College of the obligations which the latter had assumed.

In doing so, the Legislature reaffirmed that the property should be dedicated to educational purposes.

The board of trustees of Centenary College continued to use the property as a literary institution until 1909, when they abandoned it, and moved to Shreveport. Board of Trustees of Centenary College v. Hubbs, 128 La. 257, 54 South. 790.

Because of this abandonment, the Attorney General alleges and argues that the indebtedness of $10,000 has been revived, and is now due. The act of 1871 is entitled an act for the relief of Centenary College, and, while it declares that the property shall not be appropriated to any other purpose than a literary institution, it relieved the college from all further and subsequent conditions and liabilities to the state. There is no question as to the acceptance of the act by the college; and it and the state acted in accordance with its terms up to the year 1909, when the college was removed to Shreveport, and the property at Jackson was abandoned. The act of 1871 was a settlement between the parties; and it is valid and binding.

We before referred to a contract which was entered into between the state and Centenary College in 1848, which was termed an act of sale. In this act the property involved was transferred by the state to Centenary College for the sum of $10,000, for which a bond was given by the college, secured by a mortgage on the property; but the bond was not to bear interest, and it was not to be due so long as the trustees of the college kept the state buildings in good repair, and open for students, and educated gratuitously ten indigent young men to be designated by the Governor. It was further agreed between the parties that the college should be subject to visitation by a committee of the Legislature; and that, whenever the trustees should fail to perform any of the conditions named, the bond should become due. All of the conditions are shown to have been complied with up to 1871, when the Legislature relieved the college from all the conditions and liabilities to the state, except the one that the property should not be appropriated to any other purpose than a literary institution.

In view of the facts of the case, evidenced by several acts of the Legislature, it would appear: That the state had dedicated the property to the use of the educational system of the state, and appropriated large sums of money for its upbuilding and maintenance, when it was known as the College of Louisiana. That it (the state) decided to turn the property over to the trustees of Centenary College in 1848, to be carried on as a literary institution by that board, under the supervision of the state, and upon certain conditions. Centenary College was given a paper title, which was in effect a grant of the usufruct of the property, for no price was to be paid, except $10,000 in the nature of a penalty for a breach of the contract in any of its provisions. The contract was not breached; and in 1871 the Legislature relieved the college of all obligations, but stipulated anew that the property should not be appropriated to any other purpose than that of a literary institution. The act of 1871 would appear to have had the effect of canceling the so-called sale, and returning the property to the state, although the defendant has a recorded title thereto. The validity and effect of this recorded title is not now before us for decision; and we cannot dispose of it at this time.

It was argued on behalf of Centenary College that the sale was a valid and binding contract, except for the provision that the property should not be appropriated to other than educational purposes, which provision in effect took it out of commerce, and that such provision was contrary to law. It may have been contrary to the general law, but it was not contrary to the special law, which embraced the provision now objected to. The Legislature had the undoubted right to dedicate the state's property to educational purposes; and it must remain so dedicated until the Legislature declares it shall not be longer used for that purpose.

By the Act of 1871, No. 63, p. 167, the state and Centenary College had a full settlement; the college was relieved of all conditions and liabilities, which included the liability for

the purchase price. This was clearly the view of the college authorities when they abandoned the property in 1909 and moved the college to Shreveport; and it was the view of the Legislature, when it, in Act 56 of 1912, p. 67, offered the property for sale to Centenary College. The state cannot therefore enforce the collection of the sum sued for. . ·

Our former decree is reinstated and made the judgment of the court.

PROVOSTY, J., concurs in the decree.