## O. D. JENNINGS & CO. v. MAESTRI, Mayor, et al.
### No. 511.

District Court, E. D., Louisiana.
April 18, 1938.

---

Albert Koorie, of New Orleans, La., for plaintiff.

E. M. Robbert, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, La., for defendants.

BORAH, District Judge.

Plaintiff, an Illinois corporation presently engaged in the manufacture and sale of all types of automatic vending machines, brings this bill in equity to enjoin the Mayor and Superintendent of Police of the city of New Orleans from seizing and confiscating its machines, or from in any manner interfering with the alleged lawful operation thereof. By stipulation of counsel, entered into subsequent to the hearing which was heretofore had, plaintiff agreed not to press its application for a preliminary injunction, and the matter is now before the court for final hearing on the merits.

The machine in controversy is put in operation by the insertion of a 5-cent coin in a slot and by drawing downward and then releasing the metal lever which is located on the right side of the machine. Following this operation and on turning a metal knob, the customer automatically receives in return a package of candy mints equal in value to similar merchandise retailed at the same price in stores throughout the state. When the machine is put into operation, three cylinders revolve, each

independent of each other. Printed upon each of the aforementioned cylinders are certain symbols, over each of which is inscribed an incomplete sentence, and said sentences are so arranged that when the cylinders cease revolving said incomplete sentences, when read through a glass window, form complete sentences of a humorous vein. In addition to the package of mints which the customer receives, the machine at intervals delivers certain metal tokens in various numbers, depending on the chance action of the machinery. These tokens may be inserted in the same slot without causing the delivery of a package of mints but causing the amusement reels to be put into operation, and when thus operated further combinations of the humorous sayings printed on the cylinders are displayed and may be read. The machine when put in operation by the deposit of a metal token may automatically deliver other like tokens which may in turn be used to operate the amusement feature of the machine, but will not deliver another package of mints. The metal tokens are inscribed on one side, "For amusement only," and it is alleged that they have no cash or trade-in value.

The bill of complaint recites that on February 14, 1938, plaintiff shipped from its factory at Chicago thirty-five automatic candy venders consigned to itself in care of Rebecca-Fabacher, Inc., a public warehouse located in the city of New Orleans. That on February 16, 1938, it sold to one Charles Miceli four machines of the kind and character in suit, subject to a chattel mortgage, and thereafter caused said machines to be delivered to the purchaser. On February 19, 1938, Miceli leased three of said machines to the proprietors of different establishments in the city of New Orleans. On the same day members of the police department of the city of New Orleans seized and destroyed and carried away from the aforesaid establishments each of said machines, and also entered the warehouse of Rebecca-Fabacher, Inc., and seized and carried away the remaining thirty-one machines. After setting forth that the value of the machines exceeds the sum of $3,000, the bill recites that in the case of State of Louisiana v. Ashcraft, which was tried in section B, criminal district court for the parish of Orleans, a machine identical in its vending and amusement operations with that of these seized by the defendants was declared to be a legal vender, not a gambling device, and not in violation of any law of the state of Louisiana; which ruling it is alleged was recognized, followed, and adopted by the United States Circuit Court of Appeals in Ashcraft v. Healey, 5 Cir., 23 F.2d 189. The bill further alleges that the acts complained of were committed by defendants by virtue of pretended authority conferred upon them under Act No. 107 of the General Assembly of the state of Louisiana for the year 1908, and Act No. 231 for the year 1928, but that said statutes have no application to the machines in suit for the reason that same are neither gambling devices nor susceptible of being converted into gambling devices. That the arbitrary action on the part of the defendants and their threat to continue to so seize and confiscate said machines have deprived and will continue to deprive plaintiff of its property without due process of law unless injunctive relief is granted.

The two statutes which govern the operation of "slot machines" in Louisiana have been referred to. Sections 1 and 2 of Act No. 107 of 1908 provide:

"Section 1. * * * That whoever shall gamble with, use or play a 'slot machine,' or similar mechanical device for money, or representative of money or checks, or for merchandise, or any prize or anything whatever of value, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in the sum of not less than twenty-five dollars, nor more than two hundred dollars, or be imprisoned not less than thirty days, nor more than ninety days, or both at the discretion of the court.

"Section 2. Be it further enacted, etc., That any owner, lessee, tenant or proprietor of any premises or building, who shall have or permit in or about same, or connected therewith any 'slot machine' or similar mechanical device operated in violation of Section 1, of this Act, or any owner, lessee, tenant or proprietor of any premises or building where business of any nature is conducted, who permits or allows a 'slot machine,' or similar mechanical device, even though such 'slot machine,' or similar mechanical device be not in use, to remain in such building, or on such premises, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than twenty-five dollars, nor more than two hundred dollars, or be imprisoned for not less than thirty days, nor more than ninety days, or both at the discretion of the court."

Under Act No. 231 of 1928, all officers of the state are authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention.

Plaintiff does not challenge the constitutionality of these statutes. The issue in this case, as it sees it, is whether or not plaintiff's machines, per se, come within the prohibition of the aforesaid statutes of the state of Louisiana. If they do, it is conceded that defendants are justified in taking the measures they did to prevent their operation. If they do not, it is claimed that defendants' acts constitute an unwarranted interference with plaintiff's business, from which it has and will continue to suffer material and irreparable damage.

Plaintiff contends that the machines before this court are identical in their vending and amusement operations with the vending machines which were before the court in State v. Ashcraft. From this premise it is argued that the construction given to Act No. 107 of 1908 by the criminal district court of the state of Louisiana must be accepted as the law of the state of Louisiana, and must be applied and adopted by this court without inquiry as to its soundness. Plaintiff contends that since the judgment of the criminal district court is a final judgment from which no appeal lies, such a judgment would be binding on the civil district courts were an action brought in the state courts by a citizen of this state to enjoin the illegal seizure of vending machines of the type declared lawful in State v. Ashcraft. From this, it is argued that this court, because of the nonresidence of plaintiff, can exercise no greater powers than the state court would exercise in such an action. Furthermore, it is urged that this court is bound by the decision rendered by the Circuit Court of Appeals of this circuit in Ashcraft v. Healey, 23 F.2d 189.

These contentions will now be considered. The obligation of a district court to follow the decision of its own Circuit Court of Appeals is of course too fundamental to require other than mere statement. However, when, as here, it is necessary to determine what was decided in a particular case, I take it that the safest guide to follow is the interpretation which the court has placed on its own decision.

In Chambers v. Bachtel, 5 Cir., 55 F.2d 851, 853, the court said: "Our decision in Ashcraft v. Healey, 5 Cir., 23 F.2d 189, is not in conflict with this conclusion. In that case it was held merely that the trial court erred in dismissing the bill of complaint without a hearing on the merits."

This language effectively disposes of plaintiff's contention that the case of Ashcraft v. Healey is determinative of the issues which this case presents.

The criminal district court for the parish of Orleans is divided into five sections or divisions. Under section 10 of article 7 of the Constitution of Louisiana for the year 1921, no appeal lies to the Supreme Court of the state, except where a fine exceeding $300 or imprisonment exceeding six months has been actually imposed. Under section 83 of the same article, it is provided that in all cases tried before the criminal district court in which an appeal does not lie to the Supreme Court, an appeal shall lie on questions of law and fact to the appellate division of the criminal district court. There is no law authorizing the state to appeal in the case of an acquittal. The criminal district court for the parish of Orleans is therefore a court of first instance, and the judges who preside over the respective divisions of the court are under no obligation to follow the law as interpreted in a division other than their own. Nor do I understand that in this state a single decision will afford a basis for the application of the doctrine of stare decisis; Griffin v. His Creditors, 6 Rob. 216; or that the civil courts of Louisiana would be obliged to follow the construction given to Act No. 107 of 1908 by the criminal district court. In Quaker Realty Co. v. LaBasse, 131 La. 996, 60 So. 661, 665, Ann.Cas. 1914A, 1073, the Supreme Court of the state of Louisiana quoted approvingly the following language from one of its former decisions: "'A single decision is not necessarily binding.' 11 Cyc. 745. 'More than one decision,' said Judge Martin in Smith v. Smith, 13 La. 441, 'is required to settle the jurisprudence on any given point or question of law.' 'We have often said,' said this court in Lagrange v. Barre, 11 Rob. 302, 'it requires more than one decision to establish a jurisprudence.'"

That acquittal on a criminal charge is not a bar to a civil action by the government, remedial in its nature, arising out of the same facts on which the criminal

proceeding was based, has long been settled. Furthermore, the difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. Helvering v. Mitchell, 58 S.Ct. 630, 82 L.Ed. ——, decided March 7, 1938.

But let us pursue this matter further and see precisely the nature of the ruling which it is asserted this court is bound to follow without inquiry as to its soundness. The record shows that on November 9, 1926, one James B. Ashcraft was charged in an information with "being the proprietor of a warehouse in a building No. 1537 Melpomene Street, did then and there unlawfully have and permit in and about said building certain mechanical devices known as slot machines, to-wit: 144; operated, used, played and gambled with for money and representations of money, prizes and things of value." A certified extract of the minutes of the court shows that the defendant pleaded not guilty to the charge, and the trial was proceeded with. Whereupon, this state produced one Captain Geo. S. Reed as a witness and offered in evidence a slot machine, and counsel for defendant offered in evidence a package of mint, a slug, and a blue card, and the defendant admitted the testimony of other officers if summoned would be the same as that of Captain Reed. The state then closed. The defendant was then sworn as a witness in his own behalf and cross-examined on the part of the state. After argument of counsel the court took the matter under advisement and on November 19, 1926, the court rendered the following verdict: "Not Guilty." This constitutes the entire record of the criminal district court.

■ For the purpose of showing the exact issue decided, plaintiff has offered testimony by way of affidavits to show that the only issue tendered to the court was whether or not the said vending machine was or was not a slot machine within the prohibition of Act No. 107 of 1908. These affiants further state that they examined the vending machine No. 134435, which was the one machine that conveniently escaped seizure, and that same is identical with the vending and amusement operation of the machine before the court in State v. Ashcraft. These affidavits undoubtedly establish the issue which was presented and decided in the criminal case, but this court is not bound to follow a single decision of a trial court of the state and must interpret the statute for itself. It is only to a settled rule of a state court applicable to the precise facts disclosed by the record that a federal court should yield its own judgment. And while the doctrine is well established that the courts of the United States will follow a settled construction placed upon a state statute by the highest court of the state, the construction thus followed must be from the highest court of the state; otherwise, the finality and conclusiveness which constitutes the very essence of the doctrine would be lacking.

■ I am of the opinion that the machines in controversy here are gambling devices. White v. Hesse, 60 App.D.C. 106, 48 F.2d 1018; Chambers v. Bachtel, 5 Cir., 55 F.2d 851; Boynton v. Ellis, 10 Cir., 57 F.2d 665. A slot machine which gives for a coin deposited therein merchandise of the value of the coin, and also returns at uncertain intervals, in varying amounts, money, or checks, or anything of value, is a gambling device. The element of chance is present every time a nickel is dropped in the slot and every time a token is played. In this respect the machine falls within the words of the statute. The fact that the operator always gets a package of mints with every nickel used does not eliminate the further element of chance of getting additional tokens and amusement features. In Chambers v. Bachtel, supra, machines similarly operated were held to be gambling devices, and the court said: "There is much reason for holding them to be so even when tokens are used in operating them. He would be a credulous person indeed who could believe that the customers playing with nothing but tokens expected only amusement and were not actuated by the belief that they could exchange them for money or other thing of value. It is of no significance that there was no agreement to redeem the tokens in cash or in goods. Formal agreements or self-serving statements that nothing approaching gambling will be permitted in the use of gambling rooms or instruments are not unusual and are made for obvious purposes of deception, as is well pointed out by the Supreme Court of South Carolina in Harvie v. Heise, 150 S.C. 277, 148 S.E. 66, where this same kind of machine was held to be a gambling device. But if there is any doubt about the machine being a gambling device when operated by tokens, there can be none when it is played

with coins, for then money is won or lost, depending upon the positions in combination of the amusing pictures when the cylinders, after revolving, come to rest. By the easy method of removing the pin the machine becomes a gambing device if it was not one before. Assuming that the machine is an innocent vender of merchandise when the pin is in place and is a gambling machine when it is removed, we are of opinion that the trial court should not have issued the injunction. The ease with which the machine can be converted from one into the other, and the manifest difficulty against which law enforcement officers would have to contend in determining the method of operation at any particular moment, made it the duty of the trial court to deny the injunction."

The court then concludes its opinion with the admonition that the police power of the state ought not to be lightly interfered with, even in cases where the claim for relief is based upon the due process and equal protection clauses of the Fourteenth Amendment.

██ The machines in controversy may likewise be converted into coin-paying devices by the removal of certain pins, springs, and levers. However, the situation here is not comparable to the factual situation that existed in the Chambers Case where the conversion into a gambling device was accomplished "by the easy method of removing a pin." There are, however, other facts which in my judgment do call for the application of the equitable doctrine announced in the Chambers Case. Forty days prior to the institution of the present suit, a bill of complaint in all respects similar was filed in this court by one Jacob S. Pickell seeking the same relief against the parties who are named as defendants herein. After the filing of said bill a hearing was in due course had on plaintiff's application for an interlocutory injunction. At this hearing plaintiff determined not to press his application, and it was stipulated that the court should defer its judgment pending a final hearing on the merits. However, no further hearings were had as this suit was later dismissed on plaintiff's motion. The record in this case discloses that the machines involved in the Pickell suit are manufactured by the plaintiff herein, and that these machines from all outward appearances cannot be distinguished from the machines in suit. Furthermore, that by the easy method of removing a spring instead of a pin, as was the situation in the Chambers Case, the Pickell machine "becomes a gambling device if it was not one before." Considering the ease with which the machines can be substituted one for the other, it is my opinion that these facts bring this case within the holding of the court in the Chambers Case. But whether it does or does not, I am persuaded that plaintiff's machines are gambling devices, and that they should not be permitted to operate at all, as they are violative of the state statutes in question, in that the tokens or checks which are delivered in varying numbers by chance enable patrons who receive them in connection with the purchase of mints to obtain in addition something of value. It follows that equity will not enjoin the enforcement of the valid criminal laws of the state, and that the bill of complaint should be dismissed, with costs.

██ If it is not believed that this opinion is a sufficient compliance with Rule 70½ of the Equity Rules, 28 U.S.C.A. following section 723, findings of fact and conclusions of law may be submitted; otherwise, this opinion will stand as the findings of fact and conclusions of law in this case, and be deemed to constitute the formal decision thereof.