76 So.2d 15 (1954)
LOUISIANA STATE BOARD OF MEDICAL EXAMINERS
v.
John W. BOOTH.
No. 3903.
Court of Appeal of Louisiana, First Circuit.
November 18, 1954.
Rehearing Denied December 10, 1954.
Writ of Certiorari Denied February 14, 1955.
*16 Wilson Davis, Baton Rouge, Irving Ward-Steinman, Alexandria, for appellant.
Theo. F. Cangelosi, Eugene W. McGehee, Baton Rouge, for appellee.
CAVANAUGH, Judge.
The appellant is a resident of the Parish of East Baton Rouge, Louisiana, and maintains an office at his residence at 2727 Lynwood Avenue in the City of Baton Rouge. According to the record in this case, at his office, as a chiropractor, he rendered services to Ossie B. Brown for an injured shoulder. He was an investigator from the office of the District Attorney and it had been reported to the District Attorney's office by the president of plaintiff board that the defendant was practicing medicine. Defendant also at various times treated Mrs. P. O. Brady, who claimed to suffer from ulcers and arthritis. His treatment consisted of applying pressure to the back or spine and manipulating the muscles and popping the neck. This lady visited the defendant at his office and it was in his office that this service was rendered. She paid him $4 for each treatment. The witness Cline J. Myers had some disability in his spine or back and had been a patient of Dr. Willard J. Dowell, an orthopedic surgeon in the City of Baton Rouge, who had recommended a spinal fusion. He declined the operation and then went to see the defendant. The defendant gave him several treatments by manipulation and pressure and popping of his neck. He stated that was all the relief he got and he would still be crippled if it hadn't been for the defendant, who relieved his distress. All of these witnesses, except Brown, were friendly with the defendant and thought that he was rendering them satisfactory medical services because they obtained results through his treatment.
The district judge on the trial of the merits of the case, after having previously *17 granted the plaintiff a preliminary injunction against the defendant to prevent him from practicing medicine in any of its departments in the State of Louisiana until he had first obtained a certificate or permit required by law, made the injunction permanent, restraining and enjoining and prohibiting the defendant, directly or indirectly, from in any manner practicing medicine in any of its departments in the State of Louisiana until he should have obtained a certificate or permit required by law. The Court also awarded the plaintiff $50 attorney's fees to be taxed as costs of the proceeding.
The defendant appealed from the judgment and seeks a reversal here.
The defendant first filed an answer categorically denying the allegations of the plaintiff's petition. He then filed an exception of no cause or right of action, which was argued and submitted and overruled by the court. He then filed an amended answer in which he alleged that all allegations, statements and answers hitherto filed are reiterated herein except those contrary to the allegations made in the instant pleading. The grounds urged in the exception of no cause of action are that Title 37, Sections 1260 through 1290, violate Article 14, Section 1, of the United States Constitution and Article 1, Sections 2 and 6 of the Louisiana Constitution, in that it denied the defendant due process of law. That LSA-R.S. 37:1261 is ambiguous, vague, monopolistic by its own terminology, that it does not conceivably express any form of legislative intent and that it establishes no uniform rule or standard and the courts under the Statutes are called upon to legislate as to what is and what is not the practice of medicine and who is and who is not engaged in the practice of medicine, and that the enactment of law concerning osteopathy, pharmacology, homeopathy, etc. have made the practice of medicine more vague, uncertain and unrealistic, depriving citizens of due process of law.
Part of the amended answer is more in the nature of an argument in support of defendant's exception of no cause or right of action. If we interpret the pleading correctly, the amended answer challenges the constitutionality of the statute on the grounds that it denies him due process of law or equal protection of the law and that it discriminates against him in favor of other persons; that the statute only applies to those who prescribe or administer drugs or medicines or who perform surgical or physical operations or who assume title or hold themselves out to be physicians or surgeons and that defendant is excluded from the provisions of the Act. That the statute is monopolistic in that it vests arbitrary powers in the Board. It is further alleged that the proceeding is not instituted by the prosecuting officer and does not apprise him of the nature and character of the charge against him.
By brief the defendant has raised one additional ground not contained in his answer, and that is that by this civil proceeding, he is being placed twice in jeopardy because the evidence reflects that he was arrested and prosecuted for practicing as a chiropractor. It is pertinent to state here that the practice of chiropractic is that of medicine as defined by LSA-R.S. 37:1261-37:1313. The law contained in the revised statutes as redrafted was previously contained in Act 56 of 1914 and Act 54 of 1918. The State Supreme Court and the United States Supreme Court have held that the statute did not violate the due process clause of the Constitution or the equal protection clause. See Louisiana State Board of Medical Examiners v. Cronk, 157 La. 321, 102 So. 415; Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed 274 U.S. 720, 721, 47 S.Ct. 590, 71 L.Ed. 1324. The same grounds urged in the present case were urged by the defendant in the case of Louisiana State Board of Medical Examiners v. Beatty, 220 La. 1, 55 So.2d 761. The only novel ground advanced by the defendant in the case at bar than those which were advanced in the previous cases was that he was excluded from the provisions of the statutes because it was only *18 applicable to itinerants and not to bona fide residents of a place where they practice the art of healing. The statute is not limited to itinerants but defines the practice of medicine, surgery or midwifery in the following words:
"As used in this Part, `the practice of medicine, surgery, or midwifery' means the holding out of one's self to the public as being engaged in the business of diagnosing, treating, curing, or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being other than himself whether by the use of any drug, instrument or force, whether physical or psychic, or of what other nature, or any other agency or means; or the examining, either gratuitously or for compensation, of any person or material from any person for such purpose whether such drug, instrument, force, or other agency or means is applied or used by the patient or by another person; or the attending of a woman in childbirth without the aid of a licensed physician, surgeon or midwife; or the using of any other title other than optician, to indicate that he is engaged in the business of refracting or fitting glasses to the human eye." LSA-R.S. 37:1261.
Article 6, Section 12 of the Constitution of 1921 declares the public policy of the State concerning medicines and medical professions as follows:
"The Legislature shall provide for the interest of State Medicine in all its departments; for the protection of the people from unqualified practitioners of medicine, dentistry, veterinary medicine and pharmacy; for protecting confidential conmunications made to practitioners of medicine and dentistry and druggists by their patients and clients while under professional treatment and for the purpose of such treatment; for the protection of the people against the sale, barter, gift and use of injurious or adulterated drugs, foods, and drinks and against any and all misbranding and adulteration of the general necessaries of life of whatever kind or character."
Similar sections were contained in the Constitutions of 1879, Article 178; 1898, Article 297; and 1913, Article 297.
The State under its police power has the right to regulate the practice of medicine. Allopathic State Board of Medical Examiners v. Fowler, 50 La.Ann. 1358, 24 So. 809; Dent v. State of West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. Appellant attempted to offer evidence that diplomas and certificates issued by chiropractic schools in other states would not be accepted by plaintiff for the purpose of showing that he was discriminated against. The trial judge held this evidence inadmissible under the statute and stated that the only question was whether or not the defendant had met the requirements of the plaintiff, and had obtained a certificate before engaging in the practice of medicine in Louisiana. If he was qualified and the Board refused, after he had made application and had passed a satisfactory examination, to grant him a certificate, then his remedy was to proceed against the Board by mandamus to compel it to perform its ministerial duty. This State does not recognize a diploma from a school or university in another state to practice medicine in the form of chiropractic but to practice chiropractic in this State it is required that the applicant must be medical doctor or a surgeon.
The defendant contends that he comes within the exceptions provided in Section 1290 of LSA-R.S. 37, or should come within the exceptions. This contention was made in the case of Louisiana State Board of Medical Examiners v. Tackett, La.App., 71 So.2d 137, and rejected by our bretheren of the Second Circuit. We are in accord with their ruling.
We will now consider the question of double jeopardy which was not pleaded *19 in the answer or in the exception of no cause or right of action but which was argued orally and also in brief.
The defendant cites the case of United States v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551. The Court there held that a civil action to recover tax penalties under the National Prohibition Act, 27 U.S.C.A. § 1 et seq. was barred by a prior conviction based on the same transactions as to the taxes. That decision was based on the holding of the Court in the case of Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684. The ruling of the Court in these two cases was somewhat modified by Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, and it held that in a civil proceeding the degree of the burden of proof was different from that in the criminal proceeding and this precluded the application of the doctrine of res judicata. The ruling in these cases is fully discussed in U. S. v. Gramer, 9 Cir., 191 F.2d 741, 27 A.L.R.2d 1132. See also Stout v. State, 36 Okl. 744, 130 P. 553, 45 L.R.A.,N.S., 884. The following statement is found in 22 C.J.S., Criminal Law, § 240, p. 374:
"Actions for the recovery of statutory penalties have been held not to be within the constitutional guaranty. Hence where the law, besides making an act a crime, permits the recovery of a penalty for its commission, the trial of the offender for the crime is no bar to an action for the penalty, and vice versa. One reason for this, even where the parties are the same, is the difference in the degree of proof necessary to make a case in the two instances; in the criminal proceeding the state can secure judgment only on proof which excludes all reasonable doubt, while in the civil action its case is made by a preponderance of the evidence. However, to this rule there is one notable exception; where the civil action is to secure a forfeiture, which would have been part of the penalty to be imposed in the criminal proceeding, and is between the same parties, the previous acquittal is a bar."
The fact that the defendant was prosecuted criminally for violating a criminal section of the statute would not preclude the plaintiff board from seeking an injunction against him to prevent a violation of the statute in the future. O. D. Jennings & Co. v. Maestri, D.C.La., 22 F.Supp. 980; Id., 97 F.2d 679; City of New Orleans v. LaFon, La.App., 61 So.2d 270.
"Only actions intended to authorize criminal punishment to vindicate public justice, as distinguished from remedial actions brought primarily to protect the government from financial loss, subject defendant to `jeopardy' within meaning of `double jeopardy' clause. U.S.C.A.Const. Amend. 5." United States ex rel Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 380, 87 L.Ed. 443:
"The imposition of civil fraud penalties in income tax cases is not prohibited by Fifth Amendment to Constitution because taxpayer had previously pleaded guilty to indictment charging him with willfully and knowingly attempting to evade income taxes in each of the years in question, since penalty imposed was civil and not a criminal penalty, and there was therefore no `double jeopardy'. * * * U.S.C.A.Const. Amend. 5." Kenney v. Commissioner of Internal Revenue, 5 Cir., 111 F.2d 374.
Of course, the injunction proceeding provided for, the penalty, attorney's fees and costs under LSA-R.S. 37:1286 is to prevent a defendant from practicing medicine in any form without a certificate at the time the proceeding is filed and to prevent future violations of the statute. It has nothing to do with prior violations of the statute by the same person previously convicted in the criminal court of violating another section of the statute. It is intended to protect the state and the public against future violations by a person not qualified to practice medicine. Therefore, a proceeding under this section being a civil and not a criminal proceeding *20 and being remedial is not subject to a plea of res judicata or double jeopardy under the jeopardy clauses of the State and Federal Constitutions. United States ex rel. Marcus v. Hess, supra.
For the reasons assigned the judgment is affirmed.