1 ,PER CURIAM.
This post-conviction proceeding concerns funding issues for an indigent death row inmate represented by pro bono counsel. Defendant argues the systematic provision of funds to some death row inmates seeking post-conviction relief violates equal protection guarantees. Defendant’s equal protection claim appears to have two facets. First he suggests that those represented by the Capital Posb-Conviction Project of Louisiana (CPCPL) get more funding than he does and this fact disad *793 vantages Mm. Second, he claims that the fact that he has to litigate his funding requests while those who have representation from CPCPL do not have to do so disadvantages him. However, as the record is lacking the necessary evidence and ruling for a proper determination of this funding issue, we remand this matter to the district court for an evidentiary hearing and ruling.
FACTS AND PROCEDURAL HISTORY
The facts of the first-degree murder conviction, which is now final, is not necessary to the disposition of the funding issues raised by defendant in his post-conviction proceeding. For completeness we will briefly set out the procedural [^history from the date of the conviction.
A jury convicted defendant, Jimmy Williams, of first-degree murder and sentenced him to death for the June 15; 1994 killing of Gordon Lawless. Finding no reversible error we affirmed both the conviction and the sentence. State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, reh’g denied (La.2/20/98). Certiorari was denied by the United States Supreme Court. Williams v. Louisiana, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998), reh’g denied, 525 U.S. 1034, 119 S.Ct. 579, 142 L.Ed.2d 482 (1998).
An execution date of February 10, 1999, was set. Defendant filed a pro se motion for a stay of execution and appointment of counsel. This Court granted the stay and ordered the district court to appoint counsel for defendant and to set a reasonable time for counsel to file an application for post-conviction relief, if appropriate. State ex rel. Williams v. State, 99-0365 (La.2/10/99), 750 So.2d 801.
Defendant, through court appointed pro bono counsel, filed a petition for post-conviction relief. The commissioner for the district court could make no recommendation on the petition, based on the petition’s failure to state a claim both procedurally and substantively, and recommended that it be dismissed.[1] Counsel for defendant moved ex parte for the district court to grant funds for investigation in order for counsel to prepare and file a substantive application for post-conviction relief. The district court, in a series of orders, awarded funds for this investigation. Defendant then filed a first amended and supplemental petition for post-conviction relief. The commissioner issued her recommendations, finding there was sufficient evidence to warrant a full- evidentiary hearing on some of defendant’s post-conviction claims. Subsequently, the district court issued an oral ruling, wherein it determined |sa full evidentiary hearing was warranted on some, but not all, of defendant’s post-conviction claims.[2] The evidentiary hearing vyas set for February 9, 2004.
Prior to the hearing, defendant filed an ex parte motion to sécure funding for experts to present defendant’s claims at the *794 evidentiary hearing. In this motion, defendant alleged the current system of providing funds to indigent capital post-conviction defendants violates equal protection and due process rights because defendants represented by CPCPL receive these funds without having to petition the court. The district court granted $10,000 of the $30,000 defendant requested, ordering the local Indigent Defender Board (IDB) for the 19th Judicial District to make the funds available. Subsequent to this order, the IDB informed the court these funds were not available. Defendant then moved to stay the evidentiary hearing. The district court, after an expedited hearing, ordered the previously scheduled evidentiary hearing converted to a hearing regarding funding availability.
After hearing argument and testimony, the district court made the following finding:
It is the court’s determination and ruling as follows: to direct the defendant to go forward without the assistance of expert assistance at his hearing, which I’ve determined is appropriate, would violate due process and equal protection of the law. However, to deny the state likewise and the victim’s family the right to proceed with all deliberate speed, the right to proceed to a fair and timely adjudication of the issues remaining does substantial injustice to the State and the victim’s family.
On balance, and I do so reluctantly, I deny the right of the State to continue against this defendant at this time and I do stay the proceedings for the issues and reasons I’ve noted, and I implore the superior courts of our state | ¿to issue appropriate orders to this court, directing that I proceed in a timely fashion on a time schedule to complete this adjudication or direct me to go forward and order the defendant to go forward without such additional funding sources or funding for his claims that have been asserted....
I will issue a timetable for the stay of this court’s order. The stay against the State will operate for a period of sixty days. Absent which I have received further orders from the superior court, this court determines that in the interest of justice and balance, this court will order that the defense go forward and present their evidentiary hearing and evidence in sixty days.... That’s the order of the court.[3]
The district court scheduled the evidentia-ry hearing for April 26-28, 2004. Defendant then applied to this Court for supervisory writs.
We granted the writ in order to clarify the appropriate guidelines governing the determination of funding for an indigent capital post-conviction defendant and to address the source of that funding, particularly in light of the equal protection argument raised. State ex rel. Williams v. State, 04-0575 (La.5/7/04), 872 So.2d 1073.[4]
DISCUSSION
In 1997, the Legislature statutorily created the Louisiana Indigent Defense Assistance Board (LIDAB) as an agency within the executive branch.[5] In 1999, the Legis *795 lature delegated to LIDAB the power and responsibility of appointing appellate and post-conviction counsel in death penalty cases and providing reasonably necessary services in those proceedings.[6] Specifically the law provides, in pertinent part:
[sIn a capital case in which the trial counsel was provided to an indigent defendant and in which the jury imposed the death penalty, the court, after imposition of the sentence of death, shall appoint the Indigent Defense Assistance Board, which shall promptly cause to have enrolled counsel to represent the defendant on direct appeal and in any state post-conviction proceedings, if appropriate. La.Rev.Stat. 15:149.1.
[[Image here]]
In cases where a sentence of death has been imposed, the board shall promptly cause counsel to be enrolled to represent the defendant. The board shall adopt rules and retain only such staff counsel or other counsel, who will work under the supervision of the board, as are necessary to provide counsel to represent capital defendants on direct appeal to the Supreme Court of Louisiana and to seek post-conviction relief if appropriate in state and federal court. The board shall also adopt rules regarding the provision of reasonably necessary services associated with the proceedings, including investigative, expert, and other services. The rules shall require that funds to pay for such reasonably necessary services shall be provided only upon a written showing specifically identifying the nature of the services, the cost of such services, and the need for such services with mandatory guidelines for compensation and litigation expense máximums. The board may seek funding as is available under federal law or from other public and private sources to cover the costs of providing representation in connection with applications for post-conviction relief filed in state and federal court. La.Rev.Stat. 15:151.2 E(2).
[[Image here]]
The board shall adopt its rules pursuant to the Administrative Procedure Act, and the rules shall be only those necessary to carry out the enumerated powers granted to the board by R.S. 15:151 through 151.4. La.Rev.Stat. 15:151.2 F.
LIDAB’s administrative rules provide it “may create, manage, and/or contract with a separate entity, with such staff and support personnel as are necessary, to provide counsel to represent capital defendants ... to seek post-conviction relief, if appropriate -” La. Admin, Code tit. 22, part XV, § 503C. LIDAB formed the Capital Post Conviction Project of Louisiana (CPCPL). According to the amicus brief filed by CPCPL, it provides direct representation to some inmates in capital post-conviction proceedings through its staff attorneys or by recruiting pro bono attorneys and acting as resource counsel.
|fiIn this matter pending before us the indigent capital inmate is represented by pro bono counsel, not the staff attorneys of CPCPL. Counsel for Mr. Williams have requested the court to order funds to secure experts to present defendant’s claims at the evidentiary hearing. Defendant argued in a motion filed with the district court his equal protection rights were violated because defendants directly represented by CPCPL staff attorneys are given, without the need for judicial intervention, the necessary resources to procure experts and mitigation specialists from the budget of LIDAB, a state-funded agency. Although the money comes from *796 CPCPL’s budget, CPCPL is ultimately funded by LIDAB.
At the hearing on funding held before the district court, the director of CPCPL, Denise LeBouef, testified LIDAB’s statutory duty to appoint counsel in capital post-conviction proceedings is delegated to CPCPL. CPCPL either finds a lawyer for these defendants or represents them. She further testified CPCPL cannot spend money for experts for defendants represented by pro bono counsel because the budget has no money for cases where the defendant is not represented by CPCPL and because LIDAB does not allow funding for experts where the defendant is not represented by CPCPL.
A LIDAB board member, John Digiulio, also testified at this hearing. It appears from the record that he merely attended the hearing as an observer but ended up being called by the State to testify. The State requested the court allow it to call him as a witness; the State informed the court it had not given Mr. Digiulio notice. His testimony confirmed Ms. LeBouefs testimony about LIDAB’s funding practices, but he could not answer whether this was codified in any rule or whether this rule complied with the rulemaking procedure of the Administrative Procedure Act.[7]
^Responding to the equal protection arguments of the defendants, in briefs to this Court the State argues, inter alia, LIDAB does not have authority to withhold funds from capital defendants seeking post-conviction relief simply because they are represented by pro bono counsel and not CPCPL. The State contends LIDAB, acting through its agent CPCPL, is responsible for funding defendant’s necessary expenses. According to the State, LIDAB should fulfill its obligation to fund capital post-conviction cases as directed by statutory law.
The ruling of the district court did comment that “to direct the defendant to go forward without the assistance of expert assistance at his hearing, which I’ve determined is appropriate, would violate due process and equal protection of the law ...” In further explanation, the .district court stated: “... I implore the superior courts of our state to issue appropriate orders to this court, directing that I proceed in a timely fashion on a time schedule to complete this adjudication or direct me to go forward and order the defendant to go forward without such additional funding sources or funding for his claims that have been asserted....” Ultimately, the district court issued a stay against the State for sixty days, absent “further orders from the superior courts ... this court will order that the defense go forward.... ” We do not interpret this ruling as a clear decree of unconstitutionality, but rather as a plea from the district court for guidance on the funding issues presented.
We initially granted writs in this case to address the constitutional issues raised by defendant’s arguments. However, the district court neither developed a record on the funding issue nor ruled on the constitutional argument raised. We recognize the lower court is in need of guidance from this Court in addressing this troublesome area. In order for us to fully explore and give guidance to the district court, we need a fully developed evidentiary record from all the parties involved and responsible for lathe funding aspects concerned in capital post-conviction proceedings. Most importantly, the record before us does not contain any evidence from LIDAB, other than *797 the testimony of a board member confirming the testimony of Ms. LeBoeuf.[8]
In reviewing the record, the arguments of both the State and the defendant, and the legislation and its history, we note there may be statutory violations in the manner in which the funding is allocated by LIDAB to indigent capital defendants in post-conviction proceedings. In addition, we have questions concerning the adoption of any resolutions by LIDAB regarding CPCPL and funding for indigent capital defendants and whether these resolutions were properly adopted pursuant to the Administrative Procedure Act, as required by La.Rev.Stat. 15:151.2 F. We have repeatedly and consistently held courts should avoid constitutional rulings when the case can be disposed of on non-constitutional grounds. Ring v. State Dep’t of Transp. and Dev., 02-1367, p. 5 (La.1/14/03), 835 So.2d 423, 427; Blanchard v. State through Parks and Recreation Comm’n, 96-0053, p. 3 (La.5/21/96), 673 So.2d 1000, 1002.
The constitutional issues of equal protection and due process should only be reached after the court considers the statutory issues. Therefore we remand this matter to the district court, for an eviden-tiary hearing with testimony from LI-DAB’s representative. This representative should be prepared to testify with regard to LIDAB’s policies and/or resolutions concerning allocation of funds and whether the adoption of any resolutions complied with statutory requirements. We are particularly interested in the question concerning LIDAB’s adoption of a resolution to prohibit the provision of funds for expert witnesses to civil law firms handling 19capital post-conviction cases on a pro bono basis in light of the statutory requirements contained in La. Rev.Stat. 15:151.2 E(2) and F, and mindful of the equal protection arguments raised, the effect of this resolution on defendants equal protection rights. The legislature specifically delegated to LIDAB the power and responsibility for adopting rules regarding the provision of reasonably necessary services associated with indigent post-conviction relief. Without a record on this issue, we are unable to determine if there has been any violation of LIDAB’s authority.
Accordingly, we remand this matter to the district court for evidentiary hearing on the funding question and specific ruling on the statutory issues. The district court should then consider the constitutional issue presented, in light of its ruling on the statutory funding issue. This hearing should be held with preference and priority.[9]
REMANDED FOR FURTHER PROCEEDINGS.

. Record, vol. I, p. 247.

. In his writ application and brief, defendant argues the district court erred in dismissing some of his claims and not granting an evi-dentiary hearing on them. Specifically, defendant complains the court erred in (a) not granting an evidentiary hearing on every alleged instance of ineffective assistance of counsel; (b) not granting a hearing on the claim the State improperly failed to preserve exculpatory evidence; (c) not granting a hearing on the claim the State impermissibly used race as . a factor in exercising peremptory challenges; (d) .not granting a hearing on the claim jurors impermissibly relied on the personal history related by the jury foreperson; and (e) not granting a hearing on the claim that lethal injection constitutes cruel and unusual punishment under the Eighth Amendment and La. Const. Art. I, § 20.

. Record, vol. V, pp. 1066-68.

. We also granted the writ for State ex rel. Robertson v. Cain, 03-2747 (La.5/7/04), 872 So.2d 1073, and consolidated it with Williams. Both matters were argued before us. We are pretermitting ruling on Robertson at this time. The statutory funding and constitutional issues are more squarely before us in the Williams matter. Robertson will be held in abeyance pending the evidentiary hearing to be held in Williams.

. 1997 La. Acts 1361, § 1.

. 1999 La. Acts 1012, § 1.

. LIDAB's rules shall be adopted pursuant to the Administrative Procedure Act. La.Rev. Stat. 15:151.2 F.

. At oral argument, in which we painstakingly extended the time limitation, we sua sponte asked Ms. LeBouef, who was present as an observer, to address the Court. It was obvious from this address and our questions that the evidence we needed was outside the scope of the record.

. As for the errors Mr. Williams assigned regarding the district court's decision to not grant an evidentiary hearing on (a) every alleged instance of ineffective assistance of counsel, (b) on the claim the State failed to properly preserve exculpatory evidence, (c) on the claim the State impermissibly used race as a factor in exercising peremptory challenges, (d) on the claim jurors impermissibly relied on the personal history related by the jury foreperson, and (e) on the claim lethal injection constitutes cruel and unusual punishment, we pretermit review at this time. Relator may file a writ on those issues, if necessary, after the district court’s hearing on LIDAB’s funding rules and the constitutional implications, if any.