GUIDRY, J.
|2By this appeal, the Louisiana Board of Ethics, acting in the capacity of the Supervisory Committee on Campaign Finance Disclosure (Board), challenges the amount of the penalty assessed to a political candidate based on a finding that the candidate violated La. R.S. 18:1505.2(H). The political candidate, in turn, has filed a peremptory exception raising the objection of prescription with this court and challenges the trial court’s determination that a violation of the applicable statute occurred. For the reasons that follow, we amend in part, and as amended, we affirm.
PROCEDURAL HISTORY
Corbett Ourso, Jr. was a candidate for District Court Judge, Twenty-First Judicial District, Division G, in the October 3, 1998 primary and November 3, 1998 general elections and filed campaign finance disclosure reports as required by the Campaign Finance Disclosure Act (CFDA), La. R.S. 18:1481-1532. Believing that the reports evidenced a receipt of loans in excess of the contribution limits established in La. R.S. 18:1505.2(H), the Board ordered an investigation and later issued a proposed consent opinion finding Ourso in violation of La. R.S. 18:1505.2(H). After reviewing the proposed consent opinion, Ourso suggested changes to the proposed consent opinion, requested appearances before the Board, and ultimately offered to sign a waiver relative to the defense of prescription in exchange for the opportunity to appear before the Board at its October 14, 1999 meeting. The Board forwarded the requested waiver to Ourso, which he signed on September 28, 1999, and Ourso appeared before the Board on October 14, 1999. Thereafter, the Board gave Ourso until October 29, 1999, to accept the consent opinion, which Ourso rejected on November 11, 1999. On November 19, 1999, the Board filed suit against Ourso in the Twenty-First Judicial District Court.
Trial was held on April 20, 2000, and on June 13, 2000, Ourso filed a “Peremptory Exception Raising the Objections of: Peremption and Prescription |swith Incorporated Memorandum.” Following a hearing on the exception, the trial court determined that the limitation period expressed in La. R.S. 18:1511.11(B) was peremptive, sustained the exception, and dismissed the Board’s action in a judg- *1062 merit signed on May 1, 2001. This court affirmed. State Board of Ethics v. Ourso, 01-1417 (La.App. 1st Cir.6/21/02), 888 So.2d 792. The Louisiana Supreme Court, pursuant to a writ of certiorari, reversed the judgments of the lower courts finding that the time period for filing actions under the CFDA, as set forth in La. R.S. 18:1511.11(B), is prescriptive, not peremptive. State Board of Ethics v. Ourso, 02-1978 (La.4/9/03), 842 So.2d 346. The case was remanded to the trial court for further proceedings.
On July 28, 2003, a hearing on remand was held wherein the trial court found that the Board’s enforcement action against Ourso was prescribed and again sustained Ourso’s exception, dismissing the Board’s action. The Board appealed, and this court reversed the trial court’s judgment based on the conclusion that the objection was not properly before the trial court for adjudication because the exception was not timely filed. The case was again remanded to the trial court to consider the merits of the Board’s enforcement action. State Board of Ethics v. Ourso, 04-0513 (La. App. 1st Cir.3/24/05), 898 So.2d 639 (unpublished opinion), writ denied, 05-1065 (La.6/17/05), 904 So.2d 684.
At a subsequent trial held on December 12, 2005, additional arguments were presented to the trial court. After reviewing the transcript of the April 20, 2000 trial, as well as the evidence that was introduced in conjunction therewith, the trial court rendered judgment decreeing that Ourso had “violated LSA-R.S. 18:1505.2(H), by his receipt of excessive loans in the 1998 primary and general elections.” The trial court then assessed civil penalties against Ourso pursuant to La. R.S. 18:1505.2(J) in the amount of $5,000, “together with legal interest at the maximum statutory rate, from the date of judicial demand until paid, and all costs |incurred.. .payable to the Treasurer of the State of Louisiana.” Said judgment was devolutively appealed by the Board and suspensively appealed by Ourso.
DISCUSSION

PEREMPTORY EXCEPTION ON APPEAL

While these appeals were pending, Ourso filed a peremptory exception raising the objection of prescription directly with this court. In the exception, Ourso reurges his assertion that the Board’s filing of the enforcement action was untimely and thus barred by prescription. Louisiana Code of Civil Procedure article 2163 allows an appellate court to consider a peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record. Thus, the exception is properly before this court. See Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 01-0993, pp. 10-11 (La.App. 1st Cir.8/4/04), 880 So.2d 129,136, unit denied, 04-2426 (La.1/28/05), 893 So.2d 72.
A determination of Ourso’s objection of prescription hinges on the interpretation of the document agreeing to the waiver of any defense related to prescription presented by the Board to Ourso in exchange for allowing him the opportunity to appear before the Board at its October 14, 1999 meeting. The waiver provided:
I, Corbett Ourso, Jr., do hereby acknowledge the following:
• my campaign for the October 1998 primary election has been subject to investigation by the Board of Ethics, acting as the Supervisory Committee on Campaign Finance, for the possible receipt of excessive loans;
• the Board of Ethics may take enforcement action for this alleged vio *1063 lation by virtue of the filing of a civil lawsuit for penalties;
• I have been offered the opportunity to enter into a consent agreement with the Board concerning the alleged violation;
• I have asked the staff of the Board for the opportunity to appear before the Board at its October 14, 1999 meeting in order to | r,request that any consent opinion reached allow me to seek judicial review of that opinion; and
• I understand that the staff of the Board is opposed to allowing judicial review of the consent opinion.
In consideration of the forgoing, and to preserve my opportunity to appear before the Board at its October 14, 1999 meeting, I do hereby agree to renounce, waive, and abandon any defense related to prescription or limitation of actions, particularly as to the provisions of R.S. 18:1511.11, that may have already accrued or which may accrue before November 19,1999.
The plain language of the waiver contract between the parties established that Ourso waived his right to raise the defense of prescription to the Board’s filing of an enforcement action for any violations for which prescription may have accrued or would accrue before November 19, 1999. Thus, interpreting the waiver language in conformity with established legal precepts, we overrule the exception.

SUFFICIENCY OF EVIDENCE

In his first assignment of error, Ourso also claims that no credible evidence was presented by the Board to establish who owned the funds that were allegedly contributed in excess of the limits imposed by La. R.S. 18:1505.2(H). The specific provision of the CFDA that Ourso is alleged to have violated is La. R.S. 18:1505.2(H)(3)(c), which provides in pertinent part:
No candidate including his principal campaign committee and any subsidiary committee thereof, shall accept from the same contributor a loan, transfer of funds, or contribution ... in the aggregate for all reporting periods of an election, as defined in this Paragraph/[1] including reporting periods for any supplemental reports, in excess of the contribution limits established in Paragraph (1) of this Subsection....
The contribution limit per person per election applicable to Ourso’s campaign for the position of district court judge was $2,500. See La. R.S. 18:1505.2(H)(l)(a)(ii). However, La. R.S. 18:1505.2(H)(5) provides that “[t]he |,¡provisions of this Subsection shall not apply to any contributions or loans a candidate makes to his own campaign.”
The Board is authorized by La. R.S. 18:1505.2(J)(2) to institute civil proceedings to collect civil penalties if the Board determines, based on “any.sworn complaint or other document or information received by the [Board], that a violation of Subsection H” has occurred. As previously stated, the Board instituted the underlying civil proceeding based on the campaign finance disclosure reports submitted by Ourso’s campaign treasurer in compliance with the CFDA. Reading Subsection J(2) in pari materia with Subsection H(3)(c), the Board was only required to show that Our- *1064 so received contributions or loans in excess of the contribution limits mandated in Subsection H(l)(a)(ii) from a contributor other than himself. The campaign finance reports submitted by Ourso’s campaign treasurer plainly establish that such a violation occurred. Thus, the burden shifted to Ourso to overcome the evidence presented by the Board. See Landiak, 05-0758 at 8, 899 So.2d at 542.
In attempting to overcome the evidence presented by the Board, Ourso introduced a copy of a trust agreement executed by his father and presented the testimony of Judge Brenda Bedsole Ricks, his father, and himself. At trial, Corbett Ourso, Sr. (Ourso Sr.), who acted as Ourso’s campaign treasurer, testified that although he knew that there was a $2,500 per person per election limit on campaign contributions, he nevertheless reported on the campaign finance disclosure reports that he and his wife had contributed amounts in excess of those limits. Ourso Sr. stated that he believed the contributions were not in violation of the law because he considered the money contributed to be his son’s money as a result of the trust document he had executed several months prior to the commencement of Ourso’s election campaign. He said he was not advised regarding the nature of the ownership of assets placed in trust. Nonetheless, he acknowledged that the challenged contributions came from a joint checking |7account that he maintained with his wife and that was why he had listed the contributions as being made by him and his wife.
Outside of his belief that the money contributed actually belonged to his son, Ourso Sr. repeatedly acknowledged that the money was specifically provided to assist in financing his son’s election campaign. Ourso Sr. further testified that the money provided went into his son’s campaign fund and that he thought the checks by which the money was provided were made payable to his son. The actual checks were not presented at trial.
Although he acknowledged that he told his son that he and his wife would contribute to his campaign, Ourso Sr. stated that he never told his son how much he contributed nor did he tell his son who or how much anyone else contributed to the campaign pursuant to the express request of his son. Ourso stated that all campaign contributions were given to his personal secretary, who in turn would deposit the contributions in Ourso’s campaign account.
The trust agreement executed by Ourso Sr., as settlor, named Ourso as trustee of the trust and Ourso and his sisters as beneficiaries of the trust. The trust, referred to as the “Corbett L. Ourso Family Trust,” was designated an irrevocable, “spendthrift”[2] trust that provided for distribution of income to Ourso’s mother in the event of Ourso Sr.’s death and to the beneficiaries only when a beneficiary timely exercised “the power to withdraw from the Trust in any calendar year any part or all of the property transferred to the Trust during that calendar year, in an amount not exceeding the amount of the annual exclusion....” The agreement further provided for the distribution of the principal and any accumulated income of the trust to the beneficiaries upon the occurrence of the death of both of Ourso’s parents. According to the trust document, the principal or corpus of the trust is comprised of “the sum of ONE HUNDRED AND NO/ 100 ($100.00) DOLLARS, | ^irrevocably given, donated, transferred and conveyed to the Trustee,] as well as such other sums *1065 of the Settlor’s cash and/or property which may be given, donated, transferred and conveyed unto the said Trustee from time to time.”
Considering this evidence, we reject Ourso’s assertion that the evidence demonstrates that a violation of La. R.S. 18:1505.2(H) did not occur. By law, the beneficiary of a trust only has a beneficial interest or right in the trust and not in the corpus of the trust; the ownership of the corpus of a trust is vested in the trustee during the tenure of the trust. See La. R.S. 9:1781, 1971 and 1972; Reynolds v. Reynolds, 388 So.2d 1135, 1138-1139 (La. 1979). The money contributed by Ourso Sr. and his wife would not have been a trust asset, since authority to manage and administer the trust, including distributions of income, is granted the trustee. See La. R.S. 9:2061-2131. Furthermore, the trust instrument itself expressly provides that the trustee has authority to administer and manage the assets of the trust. Hence, the existence of the trust does not support Ourso’s assertion that the money contributed by his parents from their joint checking account to his campaign was his own, since, by law and the terms of the trust agreement, Ourso Sr. did not have authority to manage or administer any of the assets of the trust. Accordingly, the trial court properly found that Ourso’s parents owned the money contributed to Our-so’s campaign, and that the amount contributed by his parents violated Subsection H in that the sum exceeded the contribution limit provided in Subsection H(l)(a)(ii). We thus reject the arguments raised by Ourso in this portion of his first assignment of error.

DUE PROCESS CHALLENGE

As part of his first assignment of error, Ourso challenges whether the evidence was sufficient to prove that he violated La. R.S. 18:1505.2(H), especially since neither the CFDA nor the jurisprudence interpreting the CFDA has established the requisite degree of proof for proving a violation. We do not find these arguments persuasive.
| flGeneraIly, the legal term “burden of proof’ “denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law.” Black’s Law Dictionary (8th ed). Under Louisiana’s civil law, the “burden of proof’ may shift back and forth between the parties as the trial progresses. Therefore, when the burden of proof has been specifically assigned to a particular party, that party must present sufficient evidence to establish the facts necessary to convince the trier of fact of the existence of the contested fact. Stated another way, the party on which the burden of proof rests must establish a prima facie case. If that party fails to carry his burden of proof, the opposing party is not required to present any countervailing evidence. On the other hand, once the party bearing the burden of proof has established a prima facie case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party’s prima facie case. Louisiana courts commonly apply this “shifting burden of proof’ in numerous specific instances, such as trial on motions for summary judgment and exceptions, and in workers’ compensation cases.
Landiak v. Richmond, 05-0758, p. 8 (La.3/24/05), 899 So.2d 535, 542.
Subsection J(2) of La. R.S. 18:1505.2 clearly provides that the Board shall institute a civil proceeding for the collection of a civil penalty when the supervisory committee determines that a violation of Subsection H of the statute has *1066 occurred. In ordinary civil actions, the plaintiff, in general, has the burden of proof and must prove the facts in issue by a preponderance of the evidence and not by some artificially created greater standard. See Talbot v. Talbot, 03-0814, p. 9 (La.12/12/03), 864 So.2d 590, 598; see also Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). Only in exceptional controversies is the clear and convincing standard applied in civil cases “where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy.” Talbot, 03-0814 at 9, 864 So.2d at 598 (quoting McCormick on Evidence § 339, at 421 (5th ed.1999)). Accordingly, the general standard of proof applicable to civil proceedings, namely, a preponderance of the evidence, applies. See Louisiana State Board of Medical Examiners v. Booth, 76 So.2d 15, 19 (La.App. 1st Cir. 1954).
As the plaintiff in the civil proceeding, the Board bore the burden of proof. The trial court obviously believed the Board met its burden of proof regarding the Imviolation of La. R.S. 18:1505.2. After reviewing the record in its entirety, we find no error in the trial court’s determination. This portion of Ourso’s assignment of error is without merit.

INTEREST AWARD

In his second assignment of error, Ourso contends that the trial court improperly awarded interest on the penalty assessed from the date of judicial demand rather than from the date of judgment. We agree. Article 1921 of the Louisiana Code of Civil Procedure provides “[t]he court shall award interest in the judgment as prayed for or as provided by law.” In the petition filed by the Board to collect civil penalties from Ourso, the Board prayed “that a rule nisi be issued herein directed to [Ourso] ordering him to appear and show cause why he should not be found to be in violation of [La. R.S.] 18:1505.2(H) and why he should not be ordered to pay to the State of Louisiana appropriate civil penalties as required by [La. R.S.] 18:1505.2(J), together with legal interest from the date of the order and all costs incurred.” It is clear that based on the Board’s use of the phrase “together with” that the Board was praying for the assessment of legal interest from the date on which Ourso was “ordered to pay to the State of Louisiana appropriate civil penalties.” As the date of that order was February 23, 2006, we amend the judgment of the trial court to reflect an award of legal interest accruing from that date.

AMOUNT OF CIVIL PENALTY

Finally, as previously noted, the Board has separately appealed asserting that the trial court failed to assess a proper penalty in accordance with La. R.S. 18:1505.2(J)(1). The amount of the penalty assessed against Ourso by the trial court was $5,000, whereas La. R.S. 18:1505.2(J)(1) provides that the penalty shall be “not more than five thousand dollars or the amount of the violation, whichever is greater.” (Emphasis added.) The trial court disregarded the words “whichever is greater” and assessed Ourso the lesser of the two amounts. The evidence |! t demonstrates that Ourso received $40,311.89 in campaign contributions from his parents in excess of the limits provided in La. R.S. 18:1505.2(H)(l)(a)(ii),[3] which excess sum was greater than $5,000. Ac *1067 cordingly, the trial court erred in failing to assess Ourso with a penalty of $40,311-89, and hence we amend the judgment appealed to reflect the assessment of a penalty in the proper amount.
CONCLUSION
For the foregoing reasons, we overrule the exception raising the objection of prescription, and we find the trial court’s determination that Corbett Ourso, Jr. violated Subsection H of La. R.S. 18:1505.2 to be correct; however, we find that the trial court erred in assessing Ourso a penalty of only $5,000. We hereby amend the award to reflect a penalty of $40,311.89 for the violation of La. R.S. 18:1505.2(H)(l)(a)(ii). We further amend the judgment to award legal interest on the civil penalties from the date of judgment, February 23, 2006. In all other respects, the judgment of the trial court is affirmed, with all costs of this appeal taxed to Corbett Ourso, Jr.
EXCEPTION OVERRULED; JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.

. Louisiana Revised Statute 18:1505.2(H)(3)(a) provides, “[flor purposes of this Subsection, a primary election and a general election shall constitute two separate elections. For purposes of this Subsection, for candidates and committees that participate in a general election, he reporting period for the general election shall be deemed to begin the day following the primary election.”

. " 'Spendthrift trust,' when used without other qualifying words, means a trust under which alienation by a beneficiary of an interest in income or principal is restricted to the full extent permitted by the Louisiana Trust Code." La. R.S. 9:1725(7).

. The Board noted at trial and before this court that it was waiving any objection to the fact that the contributions submitted by Our-so's parents, up to the legally acceptable amount of $2,500 per parent per election, were not made by separate checks, but submitted as one check in the amount of $5,000 per election.